UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JACKIE LEFLER and FRED SALMO, on
Behalf of Themselves and All Others Similarly
Situated,

        Plaintiffs,

  v.

COLUMBIA MANAGEMENT GROUP, INC.
AND COLUMBIA MANAGEMENT
ADVISORS, INC., ET AL.,

        Defendants.

C.A. No. 05-10065 PBS

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

DECHERT LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116-5021
Phone:  (617) 728-7100
Fax:     (617) 426-6567

*Counsel for Defendants Columbia
Management Group, Inc.
(n/k/a "Columbia Management
Group, LLC") and Columbia
Management Advisors, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

THE ALLEGATIONS OF THE COMPLAINT ................................................................ 3

ARGUMENT ..................................................................................................................... 5

I.     THE COMPLAINT MUST BE DISMISSED BECAUSE THE PLAINTIFFS
       LACK STANDING ................................................................................................ 5

II.    PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM,
       EVEN UNDER FEDERAL NOTICE PLEADING STANDARDS ....................... 8

III.   COUNTS I, II, III, AND V SHOULD BE DISMISSED BECAUSE THEY
       CANNOT BE BROUGHT AS DIRECT SHAREHOLDER CLAIMS ................. 11

       A.     Because The Alleged Injury Was To The Funds, Plaintiffs' Claims Can
              Only Be Brought Derivatively ................................................................... 12

       B.     Counts I, II, III and V Also Fail Because Plaintiffs Have Not Complied
              With Fed. R. Civ. P. 23.1 .......................................................................... 16

IV.    COUNT III FAILS TO STATE A CLAIM UNDER SECTION 36(A) OF THE
       ICA ....................................................................................................................... 18

       A.     Under Recent Supreme Court Precedent, Courts Must Focus On Statutory
              Text And Structure In Determining Whether Congress Intended To Confer
              A Private Right Of Action ......................................................................... 18

       B.     The Language And Structure Of Section 36(a) Manifest No Congressional
              Intent to Confer A Private Right Of Action ............................................. 21

V.     COUNT IV SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO
       STATE A CLAIM UNDER SECTION 36(B) OF THE ICA ............................... 26

       A.     Count IV Should Be Dismissed Because Plaintiffs Do Not Plead A Claim
              For Excessive Advisory Fees ..................................................................... 27

       B.     Plaintiffs Fail To State A Claim Under Section 36(b) Because They Do
              Not Seek To Recover On Behalf Of The Funds ......................................... 29

VI.    COUNT V FAILS TO STATE A CLAIM UNDER SECTION 47(B) OF THE
       ICA AND SHOULD BE DISMISSED ................................................................. 30

       A.     Plaintiffs Have No Standing To Sue Under Section 47(b) ......................... 30

       B.     Plaintiffs' Claim Under Section 47(b) Fails Because They Cannot
              Establish An Underlying Violation Of The ICA ........................................ 31

       C.     Plaintiffs' Section 47(b) Claim Fails Because They Do Not Allege That
              The Advisory Agreements, Either On Their Face Or As Necessarily
              Performed, Violated The ICA .................................................................... 32

**TABLE OF CONTENTS**
(continued)

**Page**

VII.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED ............................ 34

VIII.   PLAINTIFFS HAVE NOT SUFFICIENTLY PLED THAT COLUMBIA
        MANAGEMENT GROUP, INC. IS LIABLE AS THE PARENT TO THE
        INVESTMENT ADVISOR ........................................................................................ 36

**CONCLUSION** ........................................................................................................................ 38

# TABLE OF AUTHORITIES

## CASES

Acrymed Inc. v. Convatec,
    317 F. Supp. 2d 1204 (D. Or. 2004) ................................................................... 36-37

Alexander v. Sandoval,
    532 U.S. 275 (2001) ................................................................................... 18, passim

Baillie v. Columbia Gold Mining Co.,
    166 P. 965 (Or. 1917) ...................................................................................... 17

Benak v. Alliance Capital Mgmt. L.P.,
    No. CIV. A. 01-5734, 2004 WL 1459249 (D. N.J. Feb. 9, 2004) .............................. 28

Blasberg v. Oxbow Power Corp.,
    934 F. Supp. 21 (D. Mass. 1996) ................................................................. 13, 34

Bonano v. East Caribbean Airline Corp.,
    365 F.3d 81 (1st Cir. 2004) ........................................................................... 25

Budnick v. Baybanks, Inc.,
    921 F. Supp. 30 (D. Mass. 1996) .................................................................... 34

CCBN.Com, Inc. v. Thomson Financial, Inc.,
    270 F. Supp. 2d 146 (D. Mass 2003) ............................................................... 9

Chamberlain v. Aberdeen Asset Management Ltd.,
    No. 02 CV 5870, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005), vacated by
    2005 WL 1378757 ............................................................................. 23, 25-26

Chongris v. Board of Appeals of the Town of Andover,
    811 F.2d 36 (1st Cir. 1987) ............................................................................ 9

Clark v. Nevis Capital Mgmt., LLC,
    04 Civ. 2702, 2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) ..................................... 31

Cohen v. Citibank, N.A.,
    954 F. Supp. 621 (S.D.N.Y. 1996) ............................................................. 31, 33

Correctional Services Corp. v. Malesko,
    534 U.S. 61 (2001) ..................................................................................... 19

DM Research, Inc. v. College of American Pathologists,
    170 F.3d 53 (1st Cir. 1999) ........................................................................ 9-10

Daily Income Fund, Inc. v. Fox,
    464 U.S. 523 (1984) ............................................................................... 11, 29

**TABLE OF AUTHORITIES**
(continued)

Demoulas v. Demoulas Super Markets, Inc.,
    No. 033741865, 2004 WL 1895052 (Mass. Super. Ct. Aug. 2, 2004) .......................17

Densmore v. General Motors Acceptance Corp.,
    No. 03-C-1866, 2003 WL 22220177 (N.D. Ill. Sep. 25, 2003) ............................ 10-11

In re Dreyfus Aggressive Growth Mutual Fund Litigation,
    No. 98 Civ. 4318, 2000 WL 10211 (S.D.N.Y. Jan. 6, 2000)..........................26

In re Eaton Vance Corp. Sec. Litigation,
    219 F.R.D. 38 (D. Mass. 2003)...................................................................................6

In re Eaton Vance Corp. Sec. Litigation,
    220 F.R.D. 162 (D. Mass. 2004)...........................................................................6, 8

Ensign Corp., S.A. v. Interlogic Trace, Inc.,
    No. 90 Civ. 3497, 1990 WL 213085 (S.D.N.Y. Dec. 19, 1990)...................................7

Farragut Mortgage Co. v. Arthur Andersen LLP,
    No. 95-6231-B, 1999 WL 823656 (Mass. Super. Ct. Aug. 5, 1999) ........................13

Frazier v. Fairhaven School Committee,
    276 F.3d 52 (1st Cir. 2002) ............................................................... 19-20, 22

Gartenberg v. Merrill Lynch Asset Management, Inc.,
    694 F.2d 923 (2d Cir. 1982)...............................................................................28

Glatzer v. Bear, Stearns & Co.,
    No. 04-Civ.-8380, 2005 WL 1571981 (S.D.N.Y. July 5, 2005)....................................9

Gonzaga University v. Doe,
    536 U.S. 273 (2002) .................................................................................. 19, passim

Goodwin v. Agassiz,
    283 Mass. 358, 186 N.E. 659 (1933) ........................................................................35

Gooley v. Mobil Oil Corp.,
    851 F.2d 513 (1st Cir. 1988)..................................................................................9

Green v. Fund Asset Management,
    286 F.3d 682 (3d Cir. 2002)........................................................................... 27-28

Green v. Nuveen Advisory Corp.,
    295 F.3d 738 (7th Cir. 2002)...............................................................................28

Hurley v. FDIC,
    719 F. Supp. 27 (D. Mass. 1989) .............................................................................13

## TABLE OF AUTHORITIES
### (continued)

ING Principal Protection Funds Derivative Litigation,
369 F. Supp. 2d 163 (D. Mass 2005) ..................................................17

Jackson v. Stuhlfire,
547 N.E.2d 1146, 28 Mass.App.Ct. 924 (Mass. App. 1989) ........................12

Jernberg v. Mann,
358 F.3d 131 (1st Cir. 2004) ...............................................34-35

Kamen v. Kemper Finance Services, Inc.,
500 U.S. 90 (1991) ..............................................................12

Kauffman v. Dreyfus Fund, Inc.,
434 F.2d 727 (3d Cir. 1970) ...............................................5, 14

Komanoff v. Mabon, Nugent & Co.,
884 F. Supp. 848 (S.D.N.Y. 1995) ..............................................33

Krantz v. Fidelity Management & Research,
98 F. Supp. 2d 150 (D. Mass. 2000) ...........................................28

Lamore v. Ives,
977 F.2d 713 (1st Cir. 1992) ..................................................32

Lessler v. Little,
857 F.2d 866 (1st Cir. 1988) ..................................................31

Lewis v. Anselmi,
564 F. Supp. 768 (S.D.N.Y. 1983) .............................................16

Loewen v. Galligan,
882 P.2d 104 (Or. Ct. App. 1994) ...................................13, passim

Lydia E. Pinkham Medicine Co. v. Gove,
303 Mass. 1, 20 N.E.2d 482 (1939) ............................................35

Marcus v. Putnam,
60 F.R.D. 441 (D. Mass. 1973) ...............................................35

meVC Draper Fisher Investor Fund I Inc. v. Millennium Partners, L.P.,
260 F. Supp. 2d 616 (S.D.N.Y. 2003).........................................24

In re Merrill Lynch & Co., Inc. Research Reports Sec. Litigation,
272 F. Supp. 2d 243 (S.D.N.Y. 2003) ....................................15, 24-25

Migdal v. Rowe Price-Fleming International Inc.,
248 F.3d 321 (4th Cir. 2001) .................................................9

# TABLE OF AUTHORITIES
## (continued)

Mills v. Elec. Auto-Lite Co.,
     396 U.S. at 387 (1970) ...................................................................................32

Municipal Light Co. of Ashburnham v. Commonwealth,
     608 N.E.2d 743, 34 Mass.App.Ct. 162 (Mass. App. 1993) .........................12

Mutchka v. Harris
     No. SACV0534JVSANX, 2005 WL 1414304 (C.D. Cal. June 8, 2005) ........ 2, passim

NCR Credit Corp. v. Underground Camera,
     581 F. Supp. 609 (D. Mass. 1984) ...............................................................36

Nenni v. Dean Witter Reynolds, Inc.,
     No. 98-12454-REK, 1999 U.S.Dist. LEXIS 23351 (D. Mass. Sept. 29, 1999).............6

Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.,
     No. 97 Civ. 9261, 1999 WL 754015 (S.D.N.Y. Sep. 24, 1999) .................10

Olesh v. Dreyfus Corp.,
     No. CV-94-1664, 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995).........................6, 26, 34

Olmsted v. Pruco Life Insurance Co. of New Jersey,
     283 F.3d 429 (2d Cir 2002)........................................................... 19, passim

Pagounis v. Pendleton,
     753 N.E.2d 808, 52 Mass.App.Ct. 270 (Mass. App. 2001) .........................12

Rivera v. Wyeth-Ayerst Laboratories,
     283 F.3d 315 (5th Cir. 2002) ..........................................................................8

Rohrbaugh v. Investment Co. Institute,
     Civ. A. No. 00-1237, 2002 WL 31100821 (D.D.C. July 2, 2002) ..............28

Russello v. United States,
     464 U.S. 16 (1983)........................................................................................24

SEC v. Pinez,
     989 F. Supp. 325 (D. Mass. 1997) ...............................................................31

Sabree ex rel. Sabree v. Richman,
     367 F.3d 180 (3rd Cir. 2004) ........................................................................22

Strougo v. BEA Associates,
     No. 98 Civ. 3725, 1999 WL 147737 (S.D.N.Y. Mar. 18, 1999) .......... 27-28

Tarlov v. Paine Webber Cashfund, Inc.,
     559 F. Supp. 429 (D. Conn. 1983) ...............................................................31

## TABLE OF AUTHORITIES
### (continued)

Three Rivers Ctr. for Indep. Living v. Hous. Auth.,
    382 F.3d at 420-21 (3rd Cir. 2004) ........................................................24

Touche Ross & Co. v. Redington,
    442 U.S. 560 (1979)........................................................................18, 20

Transamerica Mtg. Advisors, Inc. v. Lewis,
    444 U.S. 11 (1979)..................................................................................20

In re Value Line Special Situation Fund Litig.,
    No. M 19-103, 1974 WL 412 (S.D.N.Y. June 13, 1974) ..............................7

West Allis Mem'l Hospital v. Bowen,
    852 F.2d 251 (7th Cir. 1988) ..................................................................22

Wilcox v. Stiles,
    873 P.2d 1102 (Or. Ct. App. 1994)...........................................................13

Williams v. Bank One Corp.,
    Civ. A. No. 03-8561, 2003 WL 22964376 (N.D. Ill. Dec. 15, 2003) ............7

Zerman v. Jacobs,
    510 F.Supp. 132 (S.D.N.Y. 1981), aff'd, 672 F.2d 901 ...............................33

## STATUTES & RULES

Rule 8(a) of the Federal Rules of Civil Procedure.....................................................9

Rule 12(b)(6) of the Federal Rules of Civil Procedure........................................1

Rule 23.1 of the Federal Rules of Civil Procedure ............................... 1, passim

Mass. Gen. Laws Ch. 156D, § 7.42 ........................................................17

Or. Rev. Stat. § 60.261.........................................................................16

Pub. L. No. 91-547, 84 Stat. 113 ...........................................................24

Section 29(b) of the Securities Exchange Act of 1934
15 U.S.C. § 78cc ...........................................................................32, 33

Section 36(a) of the Investment Company Act of 1940 ("ICA")
15 U.S.C. § 80a-35 (a) .................................................................. 3, passim

Section 36(b) of the ICA
15 U.S.C. § 80a-35 (b).................................................................. 3, passim

Section 47(b) of the ICA
15 U.S.C. § 80a-46(b) ................................................................ 31, passim

**TABLE OF AUTHORITIES**
**(continued)**

28 U.S.C. § 1367.................................................................................................34

## MISC.

Howard J. Alperin & Lawrence D. Shubow, <u>Massachusetts Practice Series,</u>
<u>Summary of Basic Law</u> (3d ed.1996) ................................................... 34-35

Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> (2d ed.
1990) ........................................................................................................9

S. Rep. No. 91-184, at 33, reprinted in 1970 U.S.C.C.A.N., 4897, 4931 ..........................24

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JACKIE LEFLER and FRED SALMO, on
Behalf of Themselves and All Others Similarly
Situated,

       Plaintiffs,

    v.

COLUMBIA MANAGEMENT GROUP, INC.
AND COLUMBIA MANAGEMENT
ADVISORS, INC., ET AL.,

       Defendants.

C.A. No. 05-10065 PBS

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Columbia Management Group, Inc. (n/k/a "Columbia Management Group, LLC") and Columbia Management Advisors, Inc. (the "Columbia Defendants") submit this memorandum in support of their motion, pursuant to Rules 12(b)(6) and 23.1, Fed. R. Civ. P., to dismiss the Complaint with prejudice.[1]

## INTRODUCTION

This action against the Columbia Defendants is a replica of more than forty "cookie-cutter" strike suits filed "on information and belief" against advisors of mutual fund

---

[1] On April 19, 2005, plaintiffs filed a Notice of Voluntary Dismissal, as to Columbia Wanger Asset Management, L.P. and the trustees associated with funds advised by that entity. On May 16, 2005, plaintiffs filed a second Notice of Voluntary Dismissal dismissing all the other named individual defendants from the case. Thus, the only remaining named defendants are Columbia Management Advisors, Inc. (the advisor to certain Columbia funds) (the "Advisor Defendant") and Columbia Management Group, Inc. (the parent of the Advisor Defendant). The Complaint also refers to John Does No. 1 through 100, but no such defendants have ever been identified.

complexes across the country within a five day period in January 2004.[2]  At best, these actions were filed with a minimum of due diligence.  Indeed, in a novel approach that stands the duties of investigation and good faith imposed by the Federal Rules of Civil Procedure on its head, the plaintiffs assert that their claims are brought "upon information and belief that the allegations are likely to have evidentiary support" and upon the astonishing "representation that they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support."  Compl. ¶ 5.

Unburdened by the slightest factual detail and asserting claims that are patently deficient as a matter of law, this action, like its many clones, represents an effort to convert supposition into cash.  Theorizing that some unnamed funds must have missed a filing deadline for some class action settlements, plaintiffs assert causes of action not recognized by Congress, that belong to funds, not shareholders, and that require actual allegations of wrongdoing, not speculation as to potential negligence.  Hoping to usurp the right of the Funds' boards to control claims of harm to the Funds, plaintiffs have brought their claims as a purported class action, skipping the crucial step of making demand on the board or alleging excuse (as is permitted in some jurisdictions) from that fundamental requirement of derivative claims.

One district court, faced with claims identical to those brought against the Columbia Defendants, has already dismissed that case with prejudice.  See Mutchka v. Harris, No. SACV0534JVSANX, 2005 WL 1414304, *1,  **1, 3-6 (C.D. Cal. June 8, 2005).  For the reasons set forth below, the same result should obtain here.

---

[2]   See Exhibit A (attached hereto) (listing more than 40 other "failure to file" lawsuits filed by some of the same plaintiffs' attorneys from the instant case); see also Complaint in Polivka v. Auch, et al., 05-Civ-0297 (S.D.N.Y.) ("UBS Complaint") (attached hereto as Exhibit B).

## THE ALLEGATIONS OF THE COMPLAINT[3]

Plaintiffs purport to bring this action on behalf of themselves and a putative nationwide class of all persons owning stock in "open-ended mutual funds with equity securities holdings in the Columbia Family of Funds (the 'Funds')" between January 10, 2002 and January 10, 2005. Complaint ("Compl.") ¶ 1. According to plaintiffs, during the putative class period "hundreds of securities class action cases were settled . . . ." Compl. ¶ 25. Plaintiffs allege that the Funds were eligible to participate in some of these settlements "by virtue of their ownership of the securities during the requisite time period of each case." Id. The Complaint proceeds to list more than 130 securities fraud class actions in which unnamed Funds, "on information and belief", may have owned shares of the securities at issue. Solely "upon information and belief", and without a single supporting fact, plaintiffs then aver that "Defendants failed to submit Proof of Claim forms in these cases and thereby forfeited Plaintiffs' rightful share of the recovery obtained in the securities class actions." Compl. ¶ 27.

Based on the foregoing allegations of "fact", plaintiffs assert the following claims:

- Breach of fiduciary duty and negligence against all defendants under common law (Counts I and II);

- Breach of fiduciary duty against all defendants pursuant to Section 36(a) of the Investment Company Act of 1940 ("ICA") (Count III);

- Breach of fiduciary duty against certain defendants under Section 36(b) of the ICA (Count IV); and

- A declaration that unidentified "Agreements" between certain defendants and the Funds are unenforceable pursuant to Section 47(b) of the ICA (Count V).

---

[3]    Solely for the purposes of this Rule 12(b)(6) motion, defendants, as they must, accept as true the well-pled allegations of the Complaint.

Given that plaintiffs' Complaint is of the "cookie cutter" variety, it is perhaps not surprising that plaintiffs appear to have no personal knowledge regarding their claims. Notably, however, despite pleading their case almost entirely on "information and belief", plaintiffs do not indicate from what information they draw the conclusion that their allegations are "likely to have evidentiary support." Yet, plaintiffs' factual speculation is just the tip of the Complaint's several deficiencies. Although the Complaint purports to address the "Columbia Family of Funds" (which are alleged to comprise of approximately 89 funds, 55 of which have the stated investment objective of owning equity securities), it does not even identify which specific Columbia Funds are the subject of the Complaint. See Compl. ¶¶ 12, 24. Nor do plaintiffs provide any information regarding their ownership in Columbia Funds, other than alleging without specification that they each owned "one of the Funds". Compl. ¶¶ 10-11. Significantly, plaintiffs do not identify either the funds in which they owned shares or the dates of their ownership.

In addition to these fatal factual errors, plaintiffs' Complaint suffers from a host of legal deficiencies. Together, the Complaint's legal and factual flaws require its dismissal for several reasons. First, plaintiffs, who do not even identify the funds in which they invested, lack standing to bring this action in the first place. See Part I. Second, plaintiffs fail to allege sufficient facts to state a claim, even under the most liberal application of federal notice pleading standards. See Part II. Third, every count except Count IV should be dismissed because plaintiffs allege claims that cannot be brought directly. See Part III. Fourth, Count III must also be dismissed because no private right of action exists under Section 36(a) of the Investment Company Act. See Part IV. Fifth, Count IV should be dismissed because plaintiffs fail to state an excessive fee claim under Section 36(b) of the Investment Company Act. See Part V. Sixth, Count V should also be dismissed as plaintiffs fail to state a cognizable claim to void the

applicable advisory agreements. <u>See</u> Part VI. Seventh, plaintiffs' state law claims (Counts I and II) should be dismissed, both because the court should decline supplemental jurisdiction and because they cannot, independently, stand as a matter of law. <u>See</u> Part VII. Finally, plaintiffs' claims against Columbia Management Group, Inc. should be dismissed as plaintiffs have not sufficiently pled that this defendant should be held liable as the parent company of the Funds' investment advisor. <u>See</u> Part VIII.

<b>ARGUMENT</b>

## I.    THE COMPLAINT MUST BE DISMISSED BECAUSE THE PLAINTIFFS LACK STANDING

As an initial matter, this Complaint should be dismissed in its entirety because plaintiffs lack standing to bring the lawsuit in the first place. To have standing, a plaintiff must have been injured as a result of his dealings with the defendant. In the context of cases involving shareholder claims against mutual funds, this means that a shareholder cannot make a claim regarding a fund in which he owned no shares. Here, plaintiffs do not even identify the "one" fund in which each plaintiff owned shares. <u>See</u> Compl. ¶¶ 10-11. Yet, they seek to sue on behalf of shareholders in dozens of separate funds, even though they do not allege that they owned shares in any specific fund, let alone all such Funds. Accordingly, plaintiffs lack standing to sue.

Courts have routinely held that shareholders cannot assert causes of actions on behalf of mutual funds they do not own. In <u>Kauffman v. Dreyfus Fund, Inc.</u>, 434 F.2d 727, 734 (3d Cir. 1970), for example, the Third Circuit held that a plaintiff who owned shares in four mutual funds could not bring a suit either as a class action or derivatively on behalf of 61 other similarly situated mutual funds. The court explained that a plaintiff who does not own shares in a fund cannot be a proper representative because "[t]he rights sought to be enforced cannot be considered 'common' to those who do and those who do not own shares." <u>Id.</u> at 736.

Similarly, in <u>In re Eaton Vance Corp. Sec. Litig.</u>, 219 F.R.D. 38 (D. Mass. 2003), the plaintiffs owned shares in two funds, but sued four separate funds. Relying upon Supreme Court precedent, the court held that plaintiffs lacked standing to bring a class action against two funds in which they held no shares:

> [T]he named plaintiffs never purchased shares in or conducted any other business with two of the four funds, namely, the Institutional and Advisers funds. The named plaintiffs have therefore not been injured by Institutional and Advisers funds. Because the plaintiffs cannot "demonstrate the requisite case or controversy between themselves personally and [the Institutional and Advisers funds] 'none may seek relief on behalf of himself or any other member of the class.'"

<u>Eaton Vance</u>, 219 F.R.D. at 41 (internal citations omitted)[4]; <u>see also</u> <u>Nenni v. Dean Witter Reynolds, Inc.</u>, No. 98-12454-REK, 1999 U.S. Dist. LEXIS 23351, *1, *6 (D. Mass. Sept. 29, 1999) (holding plaintiff had no standing to bring class action on behalf of shareholders in funds in which he did not invest).

These standing requirements also apply to derivative actions. Indeed, Federal Rule of Civil Procedure 23.1 specifically requires that a plaintiff in a shareholder derivative action allege that it "was a <u>shareholder</u> or <u>member</u> at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law"). <u>Id.</u> (emphasis added). Courts have repeatedly refused to permit plaintiffs to bring derivative claims on behalf of funds in which they have not owned shares. <u>See, e.g.,</u> <u>Olesh v. Dreyfus Corp.</u>, No. CV-94-1664, 1995 WL 500491, *1, *17 n. 7 (E.D.N.Y. Aug. 8,

---

[4]    Plaintiffs appealed the court's decision in <u>Eaton Vance</u>. The First Circuit remanded the case to the district court for consideration of two issues that were not raised in the initial opinion. In that further analysis, the court concluded that "it took the proper approach in its earlier opinion when it considered (and rejected) the plaintiffs' Article III standing as to two of the mutual funds prior to analyzing class certification." <u>In re Eaton Vance Corp. Sec. Litig.</u>, 220 F.R.D. 162, 169 (D. Mass. 2004) (internal citation omitted).

1995) (stating that "[p]laintiffs cannot assert injury to funds other than the ones to which they belong . . . ."); Williams v. Bank One Corp., Civ. A. No. 03-8561, 2003 WL 22964376, at *1 (N.D. Ill. Dec. 15, 2003) (even where funds are not separate legal entities, but merely different series of beneficial interests in a trust, a plaintiff may not derivatively sue funds in which he owned no shares) (rejecting derivative action on behalf of funds in which plaintiff was not a shareholder); In re Value Line Special Situation Fund Litig., No. M 19-103, 1974 WL 412, *1, *8 (S.D.N.Y. June 13, 1974) (dismissing in pertinent part a derivative action and holding that shareholder in one Value Line fund could not sue derivatively on behalf of other Value Line funds). These standing requirements ensure that a derivative plaintiff has suffered an injury and has an interest in the outcome of the case. See Ensign Corp., S.A. v. Interlogic Trace, Inc., No. 90 Civ. 3497, 1990 WL 213085, *1, *2 (S.D.N.Y. Dec. 19, 1990) (the contemporaneous ownership requirement "insures that derivative actions are brought by shareholders who have actually suffered injury and have an interest in the outcome of the case").

Although investors have standing to file claims only about funds in which they owned shares, the plaintiffs do not allege ownership of any specific fund that was the recipient of class actions settlement payments; plaintiffs have failed even to identify the "one" fund they each owned. See Compl. ¶¶ 10-11. Thus, on the face of the Complaint, there is no way to tell whether plaintiffs have standing to sue any particular fund. This failure is significant because if plaintiffs held shares of a fund that, for example, either participated in all settlements or was not eligible to participate in the relevant settlements, they would have suffered no injury and could bring no claim. Moreover, plaintiffs lack standing to make claims regarding all of the relevant Columbia funds as they each only allege that they owned stock in one of the funds and cannot bring claims regarding the Funds they did not own. And, plaintiffs merely claim they owned their funds at "all relevant times" -- they do not even specifically allege that they owned their

-7-

funds at the time when they could have tendered a claim in a class action settlement or received any compensation for such a claim.

For all these reasons, plaintiffs lack standing to pursue their claims with respect to any of the funds. Accordingly, the Complaint should be dismissed in its entirety.[5]

## II.    PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM, EVEN UNDER FEDERAL NOTICE PLEADING STANDARDS

Plaintiffs make their allegations "on information and belief" without identifying any source of information or reasonable belief. See Compl. ¶¶ 5, 25, 27, 33, 37, 40, 44. Instead, plaintiffs, in essence, allege that the each of the Funds may or may not have invested in more than 130 different securities and may or may not have failed to file proofs of claim in class actions relating to those securities.

---

[5]    In Mutchka, discussed above, the court dismissed one of plaintiffs' counsel's cookie-cutter lawsuits for several reasons, but not on standing grounds. See Mutchka, 2005 WL 1414304 at *2. While the district court acknowledged each of the concerns discussed above, it believed that they were more properly addressed as class certification issues than on standing grounds. That analysis should not obtain here. In Mutchka, "[a]lthough greater clarity would be preferable, the Complaint can be read to plead" that each of the defendants "played a role in each of the funds." Id. No such conclusion can be reached here. To the contrary, plaintiffs' Complaint was brought against two separate fund advisors -- Columbia Management Advisors, Inc. (which remains in the case) and Columbia Wanger Asset Management, LP (which has been dismissed from the case). See Compl. ¶ 14. The vagueness of the Complaint does not permit the Court to determine which advisor the plaintiffs have identified as playing a role in the alleged harm to them. Moreover, Mutchka's standing analysis was specifically rejected in In re Eaton Vance Corp. Sec. Litig., 220 F.R.D. 162, 165, 166-69 (D. Mass 2004) , which held that plaintiffs lacked standing to sue to mutual funds in which they had not invested. The court dismissed on the ground that "the general rule [is] that 'standing is an inherent prerequisite to the class certification inquiry . . . .'" Id. (quoting Rivera v. Wyeth-Ayerst Laboratories, 283 F.3d 315, 319 n.6 (5th Cir. 2002)).

The conclusory and unsupported allegations that plaintiffs do recite in this version of their generic complaint are insufficient to state a claim.  Despite Federal Rule of Civil Procedure 8(a)'s liberal pleading requirements, courts will "eschew any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" <u>Chongris v. Board of Appeals of the Town of Andover</u>, 811 F.2d 36, 37 (1st Cir. 1987) (internal citation omitted); <u>cf. DM Research, Inc. v. College of American Pathologists</u>, 170 F.3d 53, 55 (1st Cir. 1999).  Courts will dismiss complaints where plaintiff pleads "no facts adequate to entitle him to offer evidence in support of his (entirely conclusory) assertions."  <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 514 (1ˢᵗ Cir. 1988) (affirming motion to dismiss); <u>see also</u> <u>CCBN.Com, Inc. v. Thomson Financial, Inc.</u>, 270 F. Supp. 2d 146, 154 (D. Mass 2003) (dismissing conclusory antitrust claims and noting that even without "special pleading standards . . . plaintiffs must do more than assert conclusory allegations").

Accordingly, "more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant."  <u>Migdal v. Rowe Price-Fleming Int'l Inc.</u>, 248 F.3d 321, 326 (4th Cir. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> §1357 at 318 (2d ed. 1990)) (affirming dismissal of shareholders' ICA claims against mutual funds' investment advisors); <u>see also</u> <u>Glatzer v. Bear, Stearns & Co.</u>, No. 04-Civ.-8380, 2005 WL 1571981, *1, *5 (S.D.N.Y. July 5, 2005) (stating that "bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and are insufficient to defeat a motion to dismiss") (internal quotation omitted).  Indeed, "[t]his requirement serves to prevent costly discovery on claims with no underlying factual or legal basis."  <u>Migdal</u>, 248 F.2d at 326.

Thus, "[i]t is well established that counsel must make a reasonable inquiry before filing a complaint, as a party may not file a lawsuit in order to conduct a fishing expedition based

on a hunch." <u>Densmore v. General Motors Acceptance Corp.</u>, No. 03-C-1866, 2003 WL 22220177, *1, *2 (N.D. Ill. Sep. 25, 2003); <u>see also</u> <u>Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.</u>, No. 97 Civ. 9261, 1999 WL 754015, *1, *5 (S.D.N.Y. Sep. 24, 1999) ("Conclusory allegations alone cannot be the platform for launching an extensive, litigious fishing expedition in the hope of finding something to support them") (internal quotation omitted). While "'information and belief' pleading is permissible if the complaint demonstrates that the information is inaccessible and that the pleader has a reasonable ground to suspect those facts", courts will dismiss complaints based on information and belief that fail to meet these requirements. <u>Densmore</u>, 2003 WL 22220177, at *2 (dismissing complaint based on information and belief because plaintiff "drag[ged] [defendant] into court without conducting a concrete investigation into" important facts that were ascertainable without discovery); <u>cf.</u> <u>DM Research, Inc.</u>, 170 F.3d at 55 (stating that a complaint's "factual allegations must be specific enough to justify drag[ging] a defendant past the pleading threshold . . . .") (internal quotations omitted).

   Here, plaintiffs fail to plead even the most fundamental facts that are clearly under their control -- such as the identity of those funds in which they invested or which specific Columbia funds they claim to be covered by their Complaint. Plaintiffs' "representation" that the allegations will be "withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support" (Compl. ¶ 5) wholly ignores the duty of reasonable inquiry. Indeed, while every one of the Complaint's critical allegations are made "upon information and belief", plaintiffs make absolutely no effort to demonstrate that such information, regarding whether the Columbia Funds failed to file proofs of claim, was inaccessible to them. Nor does the Complaint explain why plaintiffs have any reasonable basis to suspect that the Columbia Funds did not file such proofs when appropriate. Instead, plaintiffs

list more than 130 securities in which these funds <u>may</u> have qualified to file proofs of claim --

apparently without even conducting any research into whether the Columbia Funds invested in

these stocks in the first place. They then, on information and belief, allege that the defendants

failed to submit proofs of claims in all these cases, without the slightest detail to support that

black or white proposition at the bottom of their claims. Plaintiffs' complaint against the

Columbia defendants -- one of more than 40 nearly identical cases filed against mutual fund

advisors across the country -- is a perfect example of a strike suit improperly brought "in order

to conduct a fishing expedition based on a hunch." <u>Densmore</u>, 2003 WL 22220177, at *2. Such

an abusive pleading should not, as a matter of law, be permitted to stand.

## III.     COUNTS I, II, III, AND V SHOULD BE DISMISSED BECAUSE THEY CANNOT BE BROUGHT AS DIRECT SHAREHOLDER CLAIMS

Plaintiffs have brought all of their claims as "direct" claims on behalf of the

putative class. Each of plaintiffs' claims (other than Count IV) can only be brought, if at all, in

the name of the corporation following demand (or, in some jurisdictions, its excuse) because the

alleged harm was to the Funds. Plaintiffs were injured, if at all, only indirectly to the extent the

Funds themselves allegedly had fewer assets as a result of failing to file proofs of claim.

Because plaintiffs do not assert their claims derivatively and, in any event, have not attempted to

comply with the pleading requirements for such an action, Counts I, II, III, and V should be

dismissed.[6]

---

[6]     Count IV is subject to dismissal on different grounds. This count alleges a violation of Section 36(b) of the Investment Company Act. That claim may be brought by a shareholder seeking recovery on behalf of the fund without prior demand. <u>See Daily Income Fund, Inc. v. Fox</u>, 464 U.S. 523 (1984). As is discussed in Point V, <u>infra</u>, plaintiffs' Section 36(b) claim fails as a matter of law because, among other things, plaintiffs do not allege excessive advisory fees or seek recovery on behalf of the Funds.

-11-

**A.    Because The Alleged Injury Was To The Funds, Plaintiffs' Claims Can Only Be Brought Derivatively**

Counts I (common law breach of fiduciary duty), II (negligence), III (breach of fiduciary duty under § 36(a) of the ICA), and V (rescission of "Agreements" with the Funds under § 47(b) of the ICA) allege claims premised on a purported duty to the Funds. In these circumstances, the applicable state law is crystal clear -- such claims may only be prosecuted derivatively. The plaintiffs' direct clams must, therefore, be dismissed.

Massachusetts and Oregon law, which govern here,[7] clearly distinguish between: (1) direct claims properly asserted by injured shareholders; and (2) claims that allege harm to the corporation, which can be brought only by the corporation itself or by shareholders in a derivative action. Under Massachusetts law, "stockholders may not in their own names bring an action for damage to the corporation in which they hold stock; they may bring a derivative action in the name of the corporation." <u>Mun. Light Co. of Ashburnham v. Commonwealth</u>, 608 N.E.2d 743, 749, 34 Mass. App. Ct. 162, 170-71 (Mass. App. 1993); <u>see also</u> <u>Pagounis v. Pendleton</u>, 753 N.E.2d 808, 812, 52 Mass. App. Ct. 270, 275 (Mass. App. 2001) (holding, under Massachusetts law, that shareholder lacked standing personally to assert counterclaim because "[a]ny harm suffered . . . was indirect in that it affected him merely as an owner of corporate stock, and the only remedy that might be available (other than a direct action by the corporation) was a stockholder's derivative suit"); <u>Jackson v. Stuhlfire</u>, 547 N.E.2d 1146, 1148, 28 Mass. App. Ct. 924, 925 (Mass. App. 1989) ("complaint alleging mismanagement or wrongdoing on the part of

---

[7]    Whether a particular action can be brought as a direct or derivative claim is determined by the law of the state under which the fund is organized or incorporated. <u>See</u> <u>Kamen v. Kemper Fin. Servs., Inc.</u>, 500 U.S. 90, 108 (1991). During the relevant time period, the Funds are principally organized as either Massachusetts business trusts or Oregon corporations. Although plaintiffs fail to identify the funds at issue, for the sake of completeness, the defendants address both Massachusetts and Oregon law.

corporate officers or directors normally states a claim of wrong to the corporation; the action, therefore is properly derivative") (internal quotation omitted).

Thus, generally a shareholder "may not sue . . . the corporation . . . if the only injury alleged is a diminution of the corporation's net worth." Hurley v. FDIC, 719 F. Supp. 27, 30 (D. Mass. 1989) (internal citation omitted); see also Blasberg v. Oxbow Power Corp., 934 F. Supp. 21, 26 (D. Mass. 1996) ("if a plaintiff alleges mismanagement of funds, embezzlement or breach of fiduciary duty resulting in a diminution of the value of the corporate stock or assets, the claim is one held by the corporation itself, and is thus derivative . . . [as] plaintiff's injury would accrue due to his role as investor in the corporation, in the form of a loss in investment value"); Farragut Mortgage Co. v. Arthur Andersen LLP, No. 95-6231-B, 1999 WL 823656, *1, *17 (Mass. Super. Ct. Aug. 5, 1999) (holding that "diminution or destruction of the value" of the shareholder's stock was "an injury suffered by the corporation itself" and therefore, derivative). Indeed, "[c]orporate mismanagement, or even fraud perpetrated on the corporation, resulting in lower stock prices cannot form the basis for an individual shareholder lawsuit . . . against the corporation." Hurley, 719 F. Supp. at 30.

Similarly, in Oregon, when a defendant "alleges harm to the corporation . . . his claim is derivative." Wilcox v. Stiles, 873 P.2d 1102, 1107 (Or. Ct. App. 1994). Hence, "a wrongful act that diminishes the value of a stock and thereby injures shareholders only indirectly, by reason of the prior injury to the corporation, is derivative." Loewen v. Galligan, 882 P.2d 104, 112 (Or. Ct. App. 1994) (internal citation omitted). Accordingly, except in limited circumstances that do not apply here, shareholders may not allege claims for mismanagement (or

even fraud) "if the only alleged injury is a diminution of stock value." Id. at 111 (affirming

dismissal of negligence and breach of fiduciary claims that were not brought derivatively).[8]

These general principles fully apply to claims involving mutual funds. For

example, the Third Circuit has held that an action alleging harm to a mutual fund may not be

brought as a direct shareholder claim. See Kauffman, 434 F.2d at 732. In that case, the court

affirmed the dismissal of a putative class action brought by a mutual fund shareholder,

explaining:

> A stockholder of a corporation does not acquire standing to
> maintain an action in his own right, as a shareholder, when the
> alleged injury is inflicted upon the corporation and the only injury
> to the shareholder is the indirect harm which consists in the
> diminution in value of his corporate shares resulting from the
> impairment of corporate assets. In this situation, it has been
> consistently held that the primary wrong is to the corporate body
> and, accordingly, that the shareholder, experiencing no direct
> harm, possesses no primary right to sue.

Id. (internal citation omitted). The court further explained that a mutual fund shareholder is no

different in this regard than other shareholders, even though the value of a mutual fund share

bears a "direct relationship to the total net assets owned by the fund." Id. at 733. Indeed,

allowing a direct claim on that basis:

> . . . . fails properly to appreciate, or seeks to ignore, the
> fundamental tenet of corporation law which treats the corporate
> body as an entity -- indeed, as a person -- separate and distinct
> from those who own shares of its stock . . . . It is this concept that
> reserves for the corporation the right to vindicate wrongs which
> harm the corporation, injuring the shareholders only in the sense
> that stock values are imperiled.

---

[8]    Direct claims are permitted when plaintiff alleges a "special injury" -- "a wrong suffered
by the shareholder not suffered by all shareholders generally or where the wrong involves
a contractual right of the shareholders, such as the right to vote." Loewen, 882 P.2d at
111.

Id. at 733; see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 260 (S.D.N.Y. 2003) (dismissing ICA § 34(b) claim, under Maryland law, for failing to proceed derivatively on behalf of the fund when the plaintiff's alleged injuries arose "because the Fund's net asset value declined").

Plaintiffs have likewise failed to allege a personal injury independent of any injury to the Funds. Rather they allege that defendants breached their fiduciary duties "by failing to ensure that the Funds participated in securities class action settlements for which the Funds were eligible." See Compl. ¶ 1 (emphasis added). Plaintiffs do not and cannot claim that they or any other shareholder had an individual or separate right to participate in the class actions at issue in the Complaint. Instead, plaintiffs merely allege that they were harmed only because the Funds failed to file proofs of claim and the Funds, as a result, were smaller than they should have been. See Compl. ¶ 25 ("the Funds were eligible to participate in the recovery in a significant number of the cases by virtue of their ownership of the securities during the requisite time period of each case") (emphasis added); ¶ 26 ("If the Defendants had submitted Proof of Claim forms on behalf of the Funds in these cases and all others to which the Funds had valid claims, the settlement funds would have increased the total assets held by the Funds") (emphasis added).

Plaintiffs' claims for negligence, breach of fiduciary duty, and violation of ICA §§ 36(a) and 47(b) are all premised on alleged injuries to the Funds. For this reason, addressing one of the cookie-cutter complaints substantially identical to this one, a critical basis for the court's judgment of dismissal was that the complaint had not "been brought derivatively." Mutchka, 2005 WL 1414304, at ** 1, 3-6 (applying Massachusetts law). The court there rejected plaintiffs' attempts to distinguish mutual funds from stocks and reasoned that plaintiffs' "injury is identical to every other investor's in that their pro rata share of the fund allegedly would have been more valuable had Defendants participated in the settlements." Id. at *6. As in

-15-

<u>Mutchka</u>, plaintiffs here have asserted, at most, claims for injury to the Funds alone; there is no claim of distinct harm to any shareholder, including plaintiffs. Such claims cannot be brought directly by shareholders. Accordingly, they should be dismissed.

**B.    Counts I, II, III and V Also Fail Because Plaintiffs Have Not Complied With Fed. R. Civ. P. 23.1**

Even had plaintiffs properly brought these counts derivatively on behalf of the Funds, the Complaint utterly fails to meet the demand requirements of Federal Rule of Civil Procedure 23.1. Rule 23.1 requires plaintiffs to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." <u>See</u> Fed. R. Civ. P. 23.1. This demand requirement "represents a strong statement of public policy" against "the maintenance of strike suits by minority shareholders which impede corporate management at great cost and to little purpose except the enrichment of counsel." <u>Lewis v. Anselmi</u>, 564 F. Supp. 768, 772 (S.D.N.Y. 1983).

Massachusetts and Oregon law both require a derivative plaintiff to make a pre-suit demand on the corporate directors that the business entity itself file an action for the alleged wrongdoing.[9] The applicable Oregon statute tracks Rule 23.1 in requiring a derivative plaintiff to allege either that their demand on the board to bring suit was refuses or plead with particularity adequate grounds for demand excusal. <u>See</u> Or. Rev. Stat. § 60.261 (2003) ("A complaint in a proceeding brought in the right of a corporation must allege with particularity the demand made, if any, to obtain action by the board of directors and either that the demand was refused or ignored or why a demand was not made . . . ."). The Oregon Supreme Court has held

---

[9]    The demand requirement is governed by state law. <u>Kamen</u>, 500 U.S. at 108.

that to excuse demand, a derivative plaintiff should "name the directors, show that they themselves are the guilty parties . . . or show such relationship to the guilty parties by blood, marriage, or business associations, or such other facts, as to justify the conclusion that they will refuse to do their duty." Baillie v. Columbia Gold Mining Co., 166 P. 965, 971 (Or. 1917) (internal citation omitted).

The demand requirement in Massachusetts is even stricter than that found in Oregon. Massachusetts recently adopted a "universal demand" statute, which requires that a demand be made in every case. See Mass. Gen. Laws Ch. 156D, § 7.42 (2004) ("No shareholder may commence a derivative proceeding until: (1) a written demand has been made upon the corporation to take suitable action; and (2) 90 days have elapsed from the date the demand was made . . . .").[10] Under this new statute, "a demand must be made prior to the commencement of every derivative case, whether or not the directors are independent with respect to the matter subject to the demand." Demoulas v. Demoulas Super Markets, Inc., No. 033741865, 2004 WL 1895052, at *1 n.3 (Mass. Super. Ct. Aug. 2, 2004). Thus, Massachusetts law does not permit plaintiffs to escape the demand requirement by pleading excuse. Plaintiffs did not make a demand on the Funds' trustees (as required in Massachusetts), nor did they even try to plead reasons for why the demand requirement should be excused (as required in Oregon).

In addition to the demand requirement, Rule 23.1 also requires that plaintiffs must verify their Complaint and aver that they were a shareholder at the time of the transaction of

---

[10]    Although § 7.42 is part of a Massachusetts statute dealing with corporations, the demand rules governing corporations apply with equal force to entities organized as Massachusetts business trusts. See ING Principal Protection Funds Derivative Litig., 369 F. Supp. 2d 163, 170 (D. Mass 2005) (applying universal demand requirement in case involving mutual funds that were Massachusetts business trusts).

-17-

which they complain and that the action is not a collusive one to confer jurisdiction on the court. See Fed. R. Civ. P. 23.1. Again, plaintiffs have done none of this.

Here, plaintiffs have not even tried to comply with Rule 23.1. They do not purport to bring a derivative claim, did not verify the Complaint, do not allege that they made demand on the trustees, and do not explain why making such demand would have been futile. Accordingly, Counts I, II, III, and V should be dismissed for failure to properly state a derivative claim.

## IV.    COUNT III FAILS TO STATE A CLAIM UNDER SECTION 36(A) OF THE ICA

In Count III, plaintiffs allege that all defendants violated Section 36(a) of the ICA by breaching their fiduciary duties. See Compl. ¶¶ 38-41. Even if this claim had been brought properly as a derivative action, it nonetheless would fail because Congress created no private right of action under Section 36(a) of the ICA.

### A.    Under Recent Supreme Court Precedent, Courts Must Focus On Statutory Text And Structure In Determining Whether Congress Intended To Confer A Private Right Of Action

By its terms, Section 36(a) does not grant an express cause of action to private litigants. See 15 U.S.C. § 80a-35(a). Thus, for plaintiffs' claim to survive a motion to dismiss, they must establish that an implied private right of action exists under Section 36(a) of the ICA. Plaintiffs cannot meet this extraordinary burden.

The determination as to whether a private right of action exists under a federal statute is "limited solely to determining whether Congress intended to create [a] private right of action." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). As the Supreme Court has explained:

> private rights of action to enforce federal law must be created by
> Congress. The judicial task is to interpret the statute Congress has

-18-

> passed to determine whether it displays an intent to create not just
> a private right but also a private remedy. Statutory intent on this
> latter point is determinative. Without it, a cause of action does not
> exist and courts may not create one, no matter how desirable that
> might be as a policy matter, or how compatible with the statute.

Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) (internal citations omitted). There is no

question that courts' ability to imply a private right of action has been contracted, not expanded

by the Supreme Court. While there was once a time when some courts would imply private

rights of action to effectuate statutory purposes -- even where the statute itself manifested no

Congressional intent to create such a right -- those decisions belong to a now discredited "ancien

regime." Id. at 287; see also Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 67 (2001)

("[W]e have retreated from our previous willingness to imply a cause of action where Congress

has not provided one"). Where no express private right of action exists, there is a presumption

against reading an implied right into a statute. See Frazier v. Fairhaven School Comm., 276 F.3d

52, 68 (1st Cir. 2002); see also Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429, 432

(2d Cir 2002). There is every reason not to depart from that presumption in the case of Section

36(a).

In a series of recent decisions, the Supreme Court has made clear that, in

determining legislative intent, courts must focus on the "text and structure" of the statute.

Sandoval, 532 U.S. at 288. As the Court has stated, "[w]here the text and structure of a statute

provide no indication that Congress intends to create new individual rights, there is no basis for a

private suit . . . ." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002); see also Olmsted, 283 F.3d

at 432 (relying on Sandoval's renewed focus on statutory "text and structure" in rejecting claim

that ICA §§ 26(f) and 27(i) created a private right of action).

To confer individual rights, Congress must use "rights-creating language."

Sandoval, 532 U.S. at 288. In other words, the text of the statute must be phrased "with an

-19-

unmistakable focus on the benefited class." Gonzaga, 536 U.S. at 284 (emphasis in original) (internal quotations omitted). By contrast, "[s]tatutes that focus on the person regulated rather than the individual protected create no implication of an intent to confer rights on a particular class of persons." Sandoval, 532 U.S. at 289 (internal quotations omitted). Moreover, "even where a statute is phrased in such explicit rights-creating terms", a plaintiff attempting to sue under an implied right of action "still must show that the statute manifests an intent 'to create not just a private right but also a private remedy.'" Gonzaga, 536 U.S. at 284 (quoting Sandoval, 532 U.S. at 286) (emphasis in original).

Thus, a court deciding whether an implied right of action exists should consider, among other things, whether Congress provided its own "remedial scheme" in the statute. Sandoval, 532 U.S. at 290. As the Supreme Court recently elaborated, the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Id.; see also Transamerica Mtg. Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"). This is especially true where Congress has granted an express private right of action in other parts of the statutory scheme. See, e.g., Touche Ross, 442 U.S. at 571-74 (declining to imply private right of action under Section 17(a) of the Exchange Act, in part, because "§ 17(a) is flanked by provisions . . . that explicitly grant private causes of action"); Frazier, 276 F.3d at 68 ("the explicit provision of remedies within a statute cuts sharply against the implication of a private right of action").

Implementing these precedents, in Olmsted, 283 F.3d 429, the Second Circuit, held that no private right of action exists under either Section 26(f) or Section 27(i) of the ICA. See id. at 432-36. The court reasoned that because neither section "explicitly provides for a private right of action . . . we must presume that Congress did not intend one." Id. at 432. The

court found that this "presumption is strengthened by three additional features of the statute." Id.

First, Sections 26(f) and 27(i) "do not contain rights-creating language" because they "only

describe[] actions by insurance companies that are prohibited", i.e., they "focus on the person

regulated rather than the individuals protected." Id. at 433. Second, Section 42 of the ICA,

which provides for SEC enforcement of the statute, weakens any implication that Congress

intended to create a private remedy because the "express provision of one method of enforcing a

substantive rule suggests that Congress intended to preclude others." Id. Third, Congress'

provision of a private right of action to enforce Section 36(b) of the ICA "suggests that omission

of an explicit private right to enforce other sections was intentional." Id.

      As discussed below, under Sandoval and its progeny, it is apparent that the "text

and structure" of the Section 36(a) reveal no congressional intent to create a private right of

action.

### B.      The Language And Structure Of Section 36(a) Manifest No Congressional Intent to Confer A Private Right Of Action

      Applying the analysis set forth in Sandoval and Olmsted, this Court should dismiss

plaintiffs' Section 36(a) claim because the text and structure of ICA § 36(a) manifest an intent by

Congress to create administrative enforcement powers and not to confer a private cause of

action. The language of the statute explicitly places the right to prosecute an action in the hands

of the Securities and Exchange Commission and does not mention any private right of action.[11]

---

[11]      Thus, Section 36(a) states in relevant part:

> The Commission is authorized to bring an action . . . alleging that a
> person serving or acting in one or more of the following capacities
> has engaged . . . or is about to engage in any act or practice
> constituting a breach of fiduciary duty involving personal
> misconduct in respect of any registered investment company for
> which such person so serves or acts

When there is no express private right of action, the First Circuit begins "with a presumption against reading an implied right of action into a statute -- a presumption that can be overcome only by compelling evidence of a contrary congressional intent." Frazier, 276 F.3d at 68 (finding no private right of action under the Family Educational Rights and Privacy Act). Because, by its own terms, Section 36(a) does not provide for an express private right of action, one "must presume that Congress did not intend one." Olmsted, 283 F.3d at 432; see also West Allis Mem'l Hosp. v. Bowen, 852 F.2d 251, 254 (7th Cir. 1988) ("A strong presumption exists against the creation of . . . implied rights of action"). Several features of the text and structure of the statute render this presumption conclusive.

First, Section 36(a) contains no "rights-creating language." The statute is not phrased with an "unmistakable focus" on granting "individual rights" or "entitlements." Gonzaga, 536 U.S. at 284-85, 287; see also Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 187-88 (3rd Cir. 2004) (relying on Gonzaga and Sandoval in stating that both implied private rights of action and statutory claims under Section 1983 "must be premised on an unambiguous articulation and conferral of rights by Congress"). To the contrary, the plain focus of Section 36(a) is on empowering the SEC to file suit, providing that "[t]he Commission is authorized to bring an action . . . ." 15 U.S.C. § 80a-35(a) (emphasis added). Thus here, as in Sandoval,

---

(a) as officer, director, member of any advisory board, investment adviser, or depositor . . . .

If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive relief or other relief against such person as may be reasonable and appropriate in the circumstances, having due regard to the protection of investors and to the effectuation of the policies declared in section 80a-1(b) of this title.

15 U.S.C. § 80a-35(a) (emphasis added).

Section 36(a) is "twice removed" from conferring individual rights because "[i]t focuse[d] neither on the individuals protected nor even on the [person] being regulated, but on the agencies that will do the regulating." Sandoval, 532 U.S. at 289; see also Gonzaga, 536 U. S. at 287 (statute directing the Secretary of Education not to disburse funds to educational institutions that release records to unauthorized persons was "two steps removed from the interests of individual students and parents" and "[did] not confer" any "individual entitlement").[12]

Second, Section 36(a) is not merely silent with regard to who may enforce it. Rather, Congress expressly and directly stated in the statute that "[t]he Commission is authorized to bring an action" for injunctive or other relief. 15 U.S.C. § 80a-35(a) (emphasis added). Again, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290; see also Olmsted, 283 F.3d at 433.

Third, the drafting history of Section 36(a) belies a congressional intent to create a private right of action. In 1970, Congress split the original Section 36 into two subsections. Specifically, Congress added a new subsection, Section 36(b), which expressly creates a fiduciary duty on the part of investment advisors with respect to the receipt of compensation for services, as well as SEC enforcement powers and a closely circumscribed private right of action.

_____

[12]    While Section 36(a) refers to "investors", it does so only in the context of stating that, if the SEC establishes a violation of Section 36(a), a court should give "due regard to the protection of investors" in formulating appropriate relief in the agency action. 15 U.S.C. § 80a-35(a) (emphasis added). Obviously, it is one thing to say that a court should consider the "protection of investors" when awarding relief in an SEC action, and quite another to say that individual investors may bring their own actions. See Chamberlain v. Aberdeen Asset Mgmt. Ltd., No. 02 CV 5870, 2005 WL 195520, *1, *3 (E.D.N.Y. Jan. 21, 2005), vacated by 2005 WL 1378757, *1 (E.D.N.Y. April 12, 2005) (holding that Section 36(a) cannot be enforced in a private action and noting that it mentions investors only in connection with the remedy to be awarded "after the Securities and Exchange Commission has established its allegations of breach of fiduciary duty").

See Pub. L. No. 91-547, 84 Stat. 113 (1970) (codified at 15 U.S.C. § 80a-35(b)). Congress

designated the original Section 36 as subsection (a), and made substantive changes to the type of

conduct covered by the new Section 36(a) and the range of relief available to the SEC. Id.; see

also S. Rep. No. 91-184, at 33, reprinted in 1970 U.S.C.C.A.N., 4897, 4931.

      Significantly, when it amended the statute, Congress expressly provided the

limited private right of action under Section 36(b), but did not provide any for Section 36(a).

Compare 15 U.S.C. § 80a-35(b) ("An action may be brought . . . by the Commission, or by a

security holder . . . .") with § 80a-35(a) ("The Commission is authorized to bring an

action . . . ."). The express provision of a private right of action in Section 36(b) shows that,

"when Congress wished to provide a private damages remedy, it knew how to do so and did so

expressly." Olmsted, 283 F.3d at 433 (quoting Touche Ross, 442 U.S. at 572); see also Three

Rivers Ctr. for Indep. Living v. Hous. Auth., 382 F.3d 412, 420-21 (3rd Cir. 2004) (favorably

citing Olmsted for "observing that in the Investment Company Act of 1940 Congress explicitly

provided a private right of action to enforce some provisions of the statute but not others").

Moreover, Congress's use of different language in the two subsections is clear evidence that it

intended a different result. See, e.g., Russello v. United States, 464 U.S. 16, 23 (1983) ("We

refrain from concluding . . . that differing language in the two subsections has the same meaning

in each").

      Following Sandoval and Olmsted, numerous courts have refused to find a private

right of action under other sections of the ICA whose text and structure, like ICA § 36(a), do not

indicate a congressional intent to create individual rights. See, e.g., meVC Draper Fisher

Investor Fund I Inc. v. Millennium Partners, L.P., 260 F. Supp. 2d 616, 621-23 (S.D.N.Y. 2003)

(finding no private right of action under ICA § 12(d)(1)(a)); In re Merrill Lynch & Co. Research

Reports Sec. Litig., 272 F. Supp. 2d 243, 258 n.14 (S.D.N.Y. 2003) (finding no private right of

action under ICA §34(b)). It is thus no surprise that very recent precedent has held that "when
Olmsted and Sandoval are applied to ICA Section 36(a), it is evident that the provision does not
give rise to a private right of action." Chamberlain, 2005 WL 195520, at *4 (emphasis added).[13]
In reaching that conclusion, the court relied on each of the factors discussed above, i.e., (1) the
lack of any rights-creating language, (2) the fact that Congress expressly granted only the SEC
the authority to bring an action alleging violation of fiduciary duties, and (3) the "implication . . .
that if Congress wished to create a private right of action for violations of Section 36(a), it could
have done so, as it did for Section 36(b)." See id. at **2-3.[14]

      The same result should obtain here. Indeed, just last month, the court in Mutchka
dismissed one of the cookie-cutter "failure to file" case's Section 36(a) claim because no private
right of action exists under that section of the ICA. Like Chamberlain, the Mutchka court relied
on Olmsted to find that no right of action exists under ICA § 36(a). See Mutchka, 2005 WL
1414304, at *4 ("This Court is persuaded by the reasoning in Olmsted and finds that Congress

---

[13]    While this opinion was vacated by an April 12, 2005 order, the court specifically noted
that the vacatur did "not constitute a reconsideration of the merits of the case or a
negation of the substance of the previously issued Order", but was "granted simply in
order to permit the parties to proceed to settlement." See Chamberlain, 2005 WL
1378757, at *1.

[14]    Plaintiffs may attempt to rely upon pre-Sandoval cases holding there is an implied private
right of action under Section 36(a) of the ICA. As noted above, however, Sandoval
explicitly cautioned courts that these older decisions allowed implied rights of action
under a lesser standard than is currently the law and thus belong to a now rejected
"ancien regime." Sandoval, 532 U.S. at 287. In Chamberlain, the district court correctly
observed that the "Olmsted court listed among these cases representing the ancien regime
a number of cases finding private rights of action under ICA § 36(a)." Chamberlain,
2005 WL 195520, at *2; see also Olmsted, 283 F.3d at 434 n. 4 (listing six pre-Sandoval
Section 36(a) cases). And, the First Circuit has also recently recognized that the Supreme
Court's decision in Sandoval "changed the legal landscape", rendering certain pre-
Sandoval decisions "as lacking continued vitality." Bonano v. East Caribbean Airline
Corp., 365 F.3d 81, 86 n. 4 (1st Cir. 2004) (finding no private right of action under the
FAA).

did not intend to create a private right of action in Section 36(a)"). As the <u>Mutchka</u> and

<u>Chamberlain</u> courts correctly concluded, there is no implied private right of action under Section

36(a). The Court should therefore dismiss Count III as a matter of law.[15]

## V.    COUNT IV SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 36(B) OF THE ICA

In Count IV, plaintiffs allege that defendants violated Section 36(b) of the ICA --

the provision which creates a fiduciary duty regarding excessive advisory fees. Because

plaintiffs have not alleged that defendants charged excessive fees, but instead allege only general

breaches of fiduciary duty unrelated to advisor compensation, this section is wholly inapposite

and the claim should be dismissed. This count also fails because the plaintiffs seek to recover

individually, and not on behalf of the Funds.

---

[15]    Even were the Court to imply a private right of action, it should still dismiss plaintiffs' Section 36(a) claim because plaintiffs have failed to allege any facts showing that the defendants engaged in a breach of fiduciary duty involving personal misconduct. Section 36(a) empowers the SEC to seek redress for an "act or practice constituting a breach of fiduciary duty involving <u>personal misconduct</u> . . ." 15 U.S.C. § 80a-35(a) (emphasis added). See <u>Olesh v. Dreyfus Corp.</u>, No. CV-94-1664, 1995 WL 500491, *1, *20 (E.D.N.Y. Aug. 8, 1995) (rejecting plaintiffs' "attempt to invoke [Section] 36(a)" because of failure to allege facts showing personal misconduct). Indeed, plaintiffs' complaint makes no allegations that any of the defendants engaged in self-dealing or personal impropriety. Moreover, this claim should also be dismissed insofar as it relates to class actions whose proof of claim filing deadlines were after the statute of limitations has run. Courts have held that the statute of limitations for claims for implied rights of action under the ICA is one year after the discovery of the claim, or after such discovery should have been made by the exercise of reasonable diligence, and no more than three years after the violation occurred. See, e.g., <u>In re Dreyfus Aggressive Growth Mut. Fund Litig.</u>, No. 98 Civ. 4318, 2000 WL 10211, *1, *3 (S.D.N.Y. Jan. 6, 2000) (stating that one-year/three-year statute of limitations applies to claims under the 1940 Act). Thus, plaintiffs' claim under Section 36(a) must be dismissed with respect to at least the securities class actions listed in the Complaint that had a deadline to submit proofs of claim prior to January 10, 2002.

A.    **Count IV Should Be Dismissed Because Plaintiffs Do Not Plead A Claim For Excessive Advisory Fees**

Count IV should be dismissed because, to put it simply, plaintiffs' Complaint does not plead an excessive fees case. Section 36(b) of the ICA provides that the "investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the <u>receipt of compensation for services, or of payments of a material nature</u> . . . ." 15 U.S.C. § 80a-35(b) (emphasis added).[16] The statute "was addressed to the problem that 'adviser's fees, generally stated as a percentage of the market value of the managed assets, which had been altogether reasonable when a fund was launched, may have become unreasonably high when the fund grew to enormous size.'" <u>Strougo v. BEA Assocs.</u>, No. 98 Civ. 3725, 1999 WL 147737, *1, *3 (S.D.N.Y. Mar. 18, 1999) (internal citation omitted).

Given that specific purpose, courts have ruled that Section 36(b) provides only a "very specific, narrow federal remedy . . . ." <u>Green v. Fund Asset Mgmt.</u>, 286 F.3d 682, 685 (3d Cir. 2002); <u>see also</u> <u>Mutchka</u>, 2005 WL 1414304, at *3 (stating that "Section 36(b) is limited in scope"). The statute "was enacted to 'address a narrow area of concern:  the negotiation and

---

[16]    The broader portion of Section 36(b) provides, in pertinent part:

> For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser.  An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person . . . .

15 U.S.C. § 80a-35(b).

-27-

enforcement of payment arrangements between the investment adviser and its fund' . . . not to

provide a cause of action separate from 36(a) to govern the adviser's general performance of

financial advice with regard to particular transactions.'" Strougo, 1999 WL 147737, at *3

(internal citation omitted); see also Green v. Nuveen Advisory Corp., 295 F.3d 738, 744 n. 9 (7th

Cir. 2002) ("fund mismanagement issues" are not within the purview of Section 36(b));

Rohrbaugh v. Inv. Co. Inst., Civ. A. No. 00-1237, 2002 WL 31100821, *1, *8 (D.D.C. July 2,

2002) ("Section 36(b) does not apply to every alleged breach of fiduciary duty by an investment

adviser"); Benak v. Alliance Capital Mgmt. L.P., No. Civ. A. 01-5734, 2004 WL 1459249, *1,

*7 (D. N.J. Feb. 9, 2004) ("those courts analyzing § 36(b) have emphasized its inapplicability to

allegations of corporate mismanagement").

     Rather than establishing a general fiduciary duty, Section 36(b) creates a limited

duty on behalf of fund advisers only "with respect to determining and receiving their advisory

fees." Green, 286 F.3d at 685. Therefore, courts have held that to state a claim under Section

36(b), a plaintiff must allege that the "adviser-manager" charged a fee "'so disproportionately

large that it bears no reasonable relationship to the services rendered and could not have been the

product of arm's-length bargaining.'" Krantz v. Fidelity Mgmt. & Research, 98 F. Supp. 2d 150,

158 (D. Mass. 2000) (quoting Gartenberg v. Merrill Lynch Asset Management, Inc., 694 F.2d

923, 928 (2d Cir. 1982)).

     To survive a motion to dismiss a Section 36(b) claim, "a complaint must state

more than a legal conclusion that a fee is excessive . . . ." Krantz, 98 F. Supp. 2d at 158. Here,

plaintiffs do not allege that the advisory fees were excessive. Nor do they aver that any advisory

fee was "so disproportionately large that it bears no reasonable relationship to the services

rendered." Gartenberg, 694 F.2d at 928. Instead, their entire Complaint focuses on an alleged

breach of fiduciary duty that is wholly unrelated to the amount of advisory fees.[17]  Even

assuming that these factual allegations were true, this is not the type of conduct that Section

36(b) is intended to address.  To hold otherwise would allow plaintiffs to attack literally any

aspect of the investment advisor's services under the guise of Section 36(b).  Consequently,

when faced with the same "failure to file" allegations found in plaintiffs' complaint, the court in

Mutchka dismissed plaintiffs' Section 36(b) claim for this very reason.  See 2005 WL 1414304,

at *3 ("To conclude that any fee is excessive merely because investment advisors allegedly have

breached some other fiduciary duty is inconsistent with the meaning of the statute and thus is

rejected by this Court").  Because plaintiffs allege no facts that, if true, would establish that the

fees the investment advisor received for managing the funds were in any way so excessive as to

constitute a breach of fiduciary duty, plaintiffs' Section 36(b) claim fails as a matter of law.

**B.     Plaintiffs Fail To State A Claim Under Section 36(b) Because They Do Not
         Seek To Recover On Behalf Of The Funds**

Plaintiffs also fail to state a Section 36(b) claim because they do not seek to

recover on behalf of the Funds.  As Section 36(b) makes clear, a shareholder claim must be

brought "on behalf of" an investment company:  "An action may be brought under this

subsection by . . .  a security holder of such registered investment company on behalf of such

company . . . ."  15 U.S.C. § 80(a)-35(b) (emphasis added).  When the Supreme Court held that

this language does not require a Rule 23.1 demand as a condition of filing a Section 36(b), it

made clear that "any recovery obtained in a Section 36(b) claim will go to the company rather

than the plaintiff."  Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 535 n. 11. (1984).  Here,

---

[17]    In fact, plaintiffs' entire theory is inconsistent with a claim of excessive fees.  Plaintiffs
allege that the Funds failed to recover money that belonged to the Funds.  Any such
failure would decrease -- not increase -- advisory fees, as such fees are based upon the
asset value of the Funds.

plaintiffs do not seek to recover on behalf of the Funds, choosing, instead, to seek recovery for themselves personally. See Compl. p. 18 (seeking compensatory and punitive damages on behalf of "the Class"). Because plaintiffs cannot recover individually under Section 36(b), they have failed to state a claim on that ground as well.[18]

## VI.    COUNT V FAILS TO STATE A CLAIM UNDER SECTION 47(B) OF THE ICA AND SHOULD BE DISMISSED

In Count V, plaintiffs rely on Section 47(b) of the ICA, 15 U.S.C. § 80a-46(b), to attempt to void the "Agreements between the Advisor Defendants (and the Parent Company and Other Affiliates) and the Funds" and to recover all funds paid under these contracts "during the time period that the violations occurred." See Compl. ¶¶ 48-49. This count should be dismissed because plaintiffs: (1) lack standing to sue under Section 47(b); (2) fail to plead a viable claim under any section of the ICA; and (3) fail to plead that any advisory contracts were illegal.

### A.    Plaintiffs Have No Standing To Sue Under Section 47(b)

First, Count V fails because plaintiffs have no standing to sue under Section 47(b). That section provides an equitable remedy for rescission of the advisory agreement between the mutual fund and its advisor.[19] As the statute makes clear, only the fund -- the party

---

[18]    Moreover, under Section 36(b), "[n]o award of damages shall be recoverable for any period prior to one year before the action was instituted." 15 U.S.C. § 80a-35(b)(3). Therefore, even were plaintiffs' ICA § 36(b) claim not deficient as a matter of law, the claim should still be dismissed with respect to at least those class actions listed in the Complaint with proof of claim filing deadlines prior to January 10, 2004.

[19]    Section 47(b) states in relevant part:

(b) Equitable results; rescission; severance.

(1) A contract that is made, or whose performance involves, a violation of this title, or of any rule, regulation, or order thereunder, is unenforceable by either party (or by a nonparty to the contract who acquired a right under the contract with knowledge of the facts by reason of which the making or

-30-

to the advisory agreement -- has standing to seek Section 47(b) remedies.  See Lessler v. Little, 857 F.2d 866, 874 (1st Cir. 1988) (affirming dismissal of Section 47(b) claim because "a shareholder . . . lacks standing to pursue on his own claims properly belonging to the corporation").  Here, plaintiffs are not parties to any of the advisory agreements.  Therefore, they have no standing to sue under Section 47(b).[20]

B.    **Plaintiffs' Claim Under Section 47(b) Fails Because They Cannot Establish An Underlying Violation Of The ICA**

In addition, plaintiffs' claim fails because Section 47(b) allows for rescission only for a contract that "is made, or whose performance involves, a violation of this title, or of any rule, regulation, or order thereunder."  15 U.S.C. § 80a-46(b).  Thus, a contracting party "can seek relief under Section 47 only by showing a violation of some other section of the Act." Tarlov v. Paine Webber Cashfund, Inc., 559 F. Supp. 429, 438 (D. Conn. 1983); see also Mutchka, 2005 WL 1414304 at *5 (dismissing Section 47(b) claim in "failure to file" complaint

---

performance violated or would violate any provision of this title or of any rule, regulation, or order thereunder) . . . .

(2) To the extent that a contract described in paragraph (1) has been performed, a court may not deny rescission <u>at the instance of any party</u> . . . .

15 U.S.C. § 80a-46(b) (emphasis added).

[20]    Similarly, Courts have also recognized that, under Section 47(b)'s "counterpart" in the Securities Exchange Act of 1934 (the "Exchange Act"), i.e., Section 29(b), shareholders who are not parties to the agreement have no right to set it aside.  See SEC v. Pinez, 989 F. Supp. 325, 341 (D. Mass. 1997) (Section 29(b) concerns only the interests of parties to the contract or those who have acquired any rights under the contract); Cohen v. Citibank, N.A., 954 F. Supp. 621, 626 (S.D.N.Y. 1996) (a plaintiff must show "he is in contractual privity with the defendant" to bring a Section 29 claim).  And, courts have reached the same conclusion with regard to Section 215 of the Investment Advisers Act of 1940, another one of Section 47(b)'s counterparts.  See, e.g., Clark v. Nevis Capital Mgmt., LLC, 04 Civ. 2702, 2005 WL 488641, *1, *13 (S.D.N.Y. Mar. 2, 2005) (citing numerous cases holding that "only parties to an investment advisory contract may sue for rescission under section 215").

because the underlying ICA claims had been dismissed).  Because, as shown above, plaintiffs

have no viable substantive claims under the ICA, their Section 47(b) claim -- dependent on the

presence of such viable claims -- fails as a matter of law.

>    **C.    Plaintiffs' Section 47(b) Claim Fails Because They Do Not Allege That The
>           Advisory Agreements, Either On Their Face Or As Necessarily Performed,
>           Violated The ICA**

Finally, Count V should be dismissed because plaintiffs do not allege that the

advisory contracts, as drafted or as necessarily performed, violate the ICA.  Not every breach of

fiduciary duty gives rise to a Section 47(b) claim.  By its own terms, Section 47(b) applies only

to "[a] contract that is made, or whose performance involves, a violation of this title, or of any

rule, regulation or under thereunder." 15 U.S.C. § 80a-46(b) (emphasis added).  Therefore, to

violate Section 47(b), the contract, as written, must violate the ICA, or the contract must require

performance which necessarily would violate the ICA.  Indeed, to apply this section to an

advisory contract that just happens to be in place when the advisor breaches a duty unrelated to

the contract would render the statutory language superfluous.  See generally, Lamore v. Ives, 977

F.2d 713, 716-17 (1st Cir. 1992) (noting that "no construction should be adopted which would

render statutory words or phrases meaningless, redundant, or superfluous") (internal quotation

omitted).

As discussed, to interpret Section 47(b), courts frequently look to cases decided

under Section 29(b) of the Exchange Act, another federal securities law provision that sets forth

circumstances under which a contract can be voided or rescinded.  See Mills v. Elec. Auto-Lite

Co., 396 U.S. 375, 387 (1970) (using cases analyzing Section 47 to address a question under

Section 29 because the two statutes are "counterparts").[21]  To state a claim under Section 29(b), a plaintiff must allege that the contract is "inherently violative" of the 1934 Act or the regulations thereunder.  Komanoff v. Mabon, Nugent & Co., 884 F. Supp. 848, 857 (S.D.N.Y. 1995); see also Cohen, 954 F. Supp. at 626 (to establish a Section 29(b) violation, a plaintiff must show that the contract involved a prohibited transaction); Zerman v. Jacobs, 510 F. Supp. 132, 135 (S.D.N.Y. 1981) (holding that under Section 29(b) "only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts"), aff'd, 672 F.2d 901 (2d Cir. 1981).

Given the strong similarity between Sections 29(b) and 47(b), it follows that Section 47(b) remedies likewise are only available if the text of the advisory agreements violates the ICA or if the performance of the agreements would necessarily violate the ICA.  Here, plaintiffs' claims have nothing to do with the agreements.  Plaintiffs do not allege that the contracts, as written, required the Advisor Defendant not to file proofs of claim; nor do they allege that the agreements could not be performed absent such a failure.  Thus, plaintiffs have not established that the advisory agreements violated the ICA, either by their terms or through their performance.  Accordingly, plaintiffs have no remedy under Count V and this claim should be dismissed.

---

[21]     The relevant provisions of Section 29(b) and Section 47(b) are substantially identical in substance.  Section 47(b) states that it applies to "a contract that is made, or whose performance involves, a violation of this title, or of any rule, regulation, or order thereunder", 15 U.S.C. § 80a-46(b), while Section 29(b) applies to "[e]very contract made in violation of any provisions of this title or of any rule or regulation thereunder, and every contract . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this title or any rule or regulation thereunder . . . ." 15 U.S.C. § 78cc(b).

**VII.    PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED**

Plaintiffs' state law claims for breach of fiduciary duty and negligence (Counts I and II) should be dismissed for several additional reasons.[22]

As an initial matter, if the Court dismisses plaintiffs' federal claims under the Investment Company Act, it should decline to exercise supplemental jurisdiction over plaintiffs' state law claims for negligence and breach of fiduciary duty.  See 28 U.S.C. § 1367; see also Mutchka, 2005 WL 1414304, at *6 (refusing to allow plaintiffs, in "failure to file" action, to replead their state law negligence and fiduciary duty claims because there was "no longer any basis for federal jurisdiction in light of the rulings on Section 36(a), Section 36(b), and Section 47(b) claims under the ICA"); Olesh, 1995 WL 500491, at *6 (declining to consider plaintiffs' state law fiduciary duty claim, as the court dismissed the complaint's federal claims under ICA Sections 15(f) and 36(b)); Budnick v. Baybanks, Inc., 921 F. Supp. 30, 33 (D. Mass. 1996) (dismissing plaintiff's state law claims because his federal claims had been dismissed).

Additionally, plaintiffs' state law claims should also be dismissed because they do not plead duties owed to the plaintiffs as individual shareholders.  Directors and trustees owe common law management duties to the corporations or trusts, not to individual shareholders. See, e.g., Jernberg v. Mann, 358 F.3d 131, 135 (1st Cir. 2004) ("'A director or officer of a corporation does not occupy a fiduciary relation to individual stockholders'") (quoting 14A Howard J. Alperin and Lawrence D. Shubow, Massachusetts Practice Series, Summary of Basic

---

[22]    As discussed fully above, plaintiffs' state law claims should also be dismissed as plaintiffs:  (a) lack standing to bring these claims (see Point I, supra), (b) fail to plead sufficient facts to support these counts (see Point II, supra), and (c) have improperly brought their state law claims as direct (and not a derivative) actions (see, e.g., Mutchka, 2005 WL 1414304. at **5-6; Blasberg, 934 F. Supp. at 26; Loewen, 882 P.2d at 112) (see Point III, supra).

Law § 8.85 (3d ed.1996))[23]; Goodwin v. Agassiz, 283 Mass. 358, 361, 186 N.E. 659, 660 (1933) ("[t]he contention that directors also occupy the position of trustee toward individual stockholders in the corporation is plainly contrary to repeated decisions of this court and cannot be supported").[24]  Defendants (the Funds' advisor and its parent) should not owe a greater duty to individual shareholders than do the Funds' trustees.  Indeed, an investment advisor owes its duties to the mutual funds with which it has entered in an investment advisory contract; those duties do not extend to individual mutual fund shareholders.  See Marcus v. Putnam, 60 F.R.D. 441, 444 (D. Mass. 1973) (stating that because claims arose out of the contract and duty existing between mutual funds and their advisor, the right to sue for a breach fiduciary duty claims lay with the mutual funds and not the individual investors).  Accordingly, plaintiffs as shareholders do not have the right to bring their state law claims against the defendants and they should be dismissed.

For all the above reasons, plaintiffs' common law claims for breach of fiduciary duty and negligence (Counts I and II), like their federal Investment Company Act claims, should be dismissed.

---

[23]    Indeed, as Jernberg, 358 F.3d at 135, notes, "while it is sometimes said that directors and officers owe a fiduciary duty to the corporation and its shareholders, any responsibility to the latter is anchored in the duty to the former."

[24]    Moreover, the case specifically cited in plaintiffs' Complaint (at ¶ 28) for the proposition that defendants owe fiduciary duties directly to the plaintiffs shareholders is inapposite. Lydia E. Pinkham Medicine Co. v. Gove, 303 Mass. 1, 20 N.E.2d 482 (1939), involves a plaintiff corporation and speaks of duties owed to the corporation, not to individual shareholders.

**VIII.  PLAINTIFFS HAVE NOT SUFFICIENTLY PLED THAT COLUMBIA
         MANAGEMENT GROUP, INC. IS LIABLE AS THE PARENT TO THE
         INVESTMENT ADVISOR**

       In their Complaint, plaintiffs fail to include any allegations establishing the

liability of Columbia Management Group, Inc. as the parent company to the Advisor Defendant.

The Complaint says nothing specific about Columbia Management Group, Inc., other than

identifying it as the "ultimate parent" of the advisor defendants and baldly claiming that it owes

fiduciary duties directly to the plaintiffs.  See Compl. ¶¶ 12, 31.  Indeed, the Complaint does not

plead any facts demonstrating that the parent company defendant had any responsibility for filing

proofs of claim on behalf of the Funds.  Nor have plaintiffs alleged any facts demonstrating that

Columbia Management Group, Inc. participated in the challenged conduct or somehow

controlled the Advisor Defendant's proof of claim filing activities.

       Indeed, under both Massachusetts and Oregon law, courts are very reluctant to

pierce the corporate veil to hold parent corporations responsible for the acts of their subsidiaries.

In Massachusetts, courts will pierce the corporate veil in those "rare situations" when

"representatives of one corporation exercise some type of pervasive control over the activities of

another corporation", or "there is a confused intermingling of activity of two or more

corporations engaged in a common enterprise with substantial disregard of the separate nature of

the corporate entities . . . ."  NCR Credit Corp. v. Underground Camera, 581 F. Supp. 609, 612

(D. Mass. 1984) (internal quotations omitted).  And, even under those circumstances, plaintiffs

still must show that "piercing of the corporate veil is necessary to defeat fraud or prevent gross

inequity."  Id.  Similarly, Oregon courts are "extremely reluctant to disregard the corporate form

unless exceptional circumstances exist."  Acrymed Inc. v. Convatec, 317 F. Supp. 2d 1204,

1214-15 (D. Or. 2004).  In Oregon, in order to pierce the corporate veil, plaintiffs must show that

a parent corporation (1) controlled the subsidiary, (2) engaged in improper conduct in exercising

that control, and (3) caused the plaintiffs' inability to obtain an adequate remedy from the subsidiary.  Id.  In the instant case, plaintiffs have not even attempted to plead the facts necessary to hold the parent company defendant responsible for the acts of the Funds' advisor.

As plaintiffs have alleged no facts demonstrating that Columbia Management Group, Inc. should be held primarily or vicariously liable for the Funds' alleged failure to file proofs of claim, the Complaint should be dismissed as against the parent company defendant in its entirety.

* * *

## CONCLUSION

For all of the aforementioned reasons, Defendants Columbia Management Group, Inc. (n/k/a "Columbia Management Group, LLC") and Columbia Management Advisors, Inc. respectfully request that this Court dismiss plaintiffs' Complaint in its entirety, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: July 22, 2005

Respectfully submitted,

*Francis S. Cohen*

Frances S. Cohen
Erica L. Hovani
DECHERT LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116-5021
Phone: (617) 728-7100
Fax:    (617) 426-6567

*Counsel for Defendants Columbia Management Group, Inc. (n/k/a "Columbia Management Group, LLC") and Columbia Management Advisors, Inc.*

Of Counsel:
Adam J. Wasserman
DECHERT LLP
30 Rockefeller Plaza
New York, NY  10112-2200
Phone: (212) 698-3500
Fax:    (212) 698-3599

9916663.9.LITIGATION

# EXHIBIT A

## OTHER "FAILURE TO FILE" CASES
## FILED BY CERTAIN OF PLAINTIFFS' COUNSEL

1.  <u>Hogan v. Baker</u>, 3:05-cv-00073 (N.D. Tex.) (concerning the AIM Funds)

2.  <u>Davidson v. Calvert</u>, 1:05-cv-00289 (S.D.N.Y.) (concerning the Alliance Bernstein Funds),

3.  <u>Hoppe v. Brown</u>, 4:05-cv-00048 (W.D. Mo.) (concerning the American Century Funds)

4.  <u>Hudson v. Carlson</u>, 1:05-cv-00301 (S.D.N.Y.) (concerning the American Express Funds),

5.  <u>Panell v. Berenato</u>, 2:05-cv-00188 (C.D. Cal.) (concerning the American Funds),

6.  <u>Montgomery v. Erne</u>, 2:05-cv-00036 (E.D. Wis.) (concerning the Artisan Funds),

7.  <u>Montgomery v. Baron</u>, 1:05-cv-00299 (S.D.N.Y.) (concerning the Baron Funds),

8.  <u>McDermott v. Calamos</u>, 1:05-cv-00141 (N.D. Ill.) (concerning the Calamos Funds),

9.  <u>Glickman v. Berman</u>, 1:05-cv-00288 (S.D.N.Y.) (concerning the Dreyfus Funds),

10. <u>Brignac v. Hagey</u>, 3:05-cv-00153 (N.D. Cal.) (concerning the Dodge & Cox Funds),

11. <u>Stoker v. Hawkes</u>, 1:05-cv-10064 (D. Mass.) (concerning the Eaton Vance Funds),

12. <u>Emblad v. Austin</u>, 1:05-cv-10055 (D. Mass.) (concerning the Evergreen Funds),

13. <u>Beugli v. Donahue</u>, 2:05-cv-00114 (E.D. Pa.) (concerning the Federated Funds),

14. <u>Hayes v. Durham</u>, 1:05-cv-00028 (S.D. Ohio) (concerning the Fifth Third Funds),

15. <u>Lefler v. Beinecke</u>, 1:05-cv-00303 (S.D.N.Y.) (concerning the First Eagle Funds),

16. <u>Binford v. Abbott</u>, 3:05-cv-00155 (N.D. Cal.) (concerning the Franklin Funds),

17. <u>McWilliams v. Gabelli</u>, 1:05-cv-00300 (S.D.N.Y.) (concerning the Gabelli Funds),

18. <u>Hamilton v. Allen</u>, 2:05-cv-00110 (E.D. Pa.) (concerning the Gartmore Funds),

19. <u>Masden v. Paulson</u>, 1:05-cv-00291 (S.D.N.Y.) (concerning the Goldman Sachs Funds),

20. <u>Davis v. Bailey</u>, 1:05-cv-00042 (D. Colo.) (concerning the Janus Funds),

21. <u>Stegall v. Ladner</u>, 1:05-cv-10062 (D. Mass.) (concerning the John Hancock Funds),

22. <u>Arturo v. Ackerman</u>, 1:05-cv-10058 (D. Mass). (concerning the Mass Mutual Funds),

23.    Johns v. Zeikel, 2:05-cv-00206 (D.N.J.) (concerning the Merrill Lynch Funds),

24.    Collins v. Manning, 1:05-cv-10059 (D. Mass.) (concerning the MFS Funds),

25.    Everett v. Bozic, 1:05-cv-00296 (S.D.N.Y.) (concerning the Morgan Stanley Funds),

26.    Rivera v. Carmichael, 1:05-cv-00290 (S.D.N.Y.) (concerning the Nations Funds),

27.    Hoppe v. Lane, 1:05-cv-00302 (S.D.N.Y.) (concerning the Neuberger Berman Funds),

28.    Jacobs v. Bremner, 1:05-cv-00143 (N.D. Ill.) (concerning the Nuveen Funds),

29.    Griffin v. Voss, 1:05-cv-00142 (N.D. Ill.) (concerning the Oakmark Funds),

30.    Prichard v. Armstrong, 1:05-cv-00293 (S.D.N.Y.) (concerning the Oppenheimer Funds),

31.    Mutchka v. Harris, 8:05-cv-00034 (C.D. Cal.) (concerning the PIMCO Funds),

32.    Chambers v. Hill, 1:05-cv-10061 (D. Mass.) (concerning the Putnam Funds),

33.    Rill v. Royce, 1:05-cv-00304 (S.D.N.Y.) (concerning the Royce Funds),

34.    Barnes v. Lepore, 3:05-cv-00152 (N.D. Cal.) (concerning the Schwab Funds),

35.    McMunn v. Peterson, 1:05-cv-00295 (S.D.N.Y.) (concerning the Scudder Funds),

36.    Polivka v. Catell, 1:05-cv-00298 (S.D.N.Y.) (concerning the Seligman Funds),

37.    Fort v. Ades, 1:05-cv-00294 (S.D.N.Y.) (concerning the Smith Barney Funds),

38.    Emblad v. Logue, 1:05-cv-10063 (D. Mass.) (concerning the State Street Funds),

39.    James v. Brown, 4:05-cv-00154 (N.D. Cal.) (concerning the Strong Funds),

40.    Polivka v. Auch, 1:05-cv-0297 (S.D.N.Y.) (concerning the UBS Funds),

41.    Dull v. Arch, 1:05-cv-00140 (N.D. Ill.), (concerning the Van Kampen Funds),

42.    Binford v. Brennan, 2:05-cv-00112 (E.D. Pa.) (concerning the Vanguard Funds).

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | § | |
| | § | |
| FRANK POLIVKA, on Behalf of Himself and | § | |
| All Others Similarly Situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. _____ |
| | § | |
| WALTER E. AUCH, FRANK K. REILLY, | § | |
| EDWARD M. ROOB, ADELA CEPEDA, J. | § | |
| MIKESELL THOMAS, MARGO N. | § | |
| ALEXANDER, UBS FINANCIAL SERVICES, | § | |
| INC., UBS GLOBAL ASSET MANAGEMENT | § | |
| AMERICAS, INC., UBS GLOBAL ASSET | § | |
| MANAGEMENT (NEW YORK), INC., SSGA | § | |
| FUNDS MANAGEMENT, INC., MARSICO | § | |
| CAPITAL MANAGEMENT, LLC, | § | |
| DELAWARE INVESTMENTS, WESTWOOD | § | |
| MANAGEMENT CORPORATION, | § | |
| INSTITUTIONAL CAPITAL CORPORATION, | § | |
| ICM ASSET MANAGEMENT, INC., ARIEL | § | |
| CAPITAL MANAGEMENT, LLC, and JOHN | § | |
| DOES NO. 1 THROUGH 100 | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| JURY TRIAL DEMANDED | § | |

1

## CLASS ACTION COMPLAINT

## <u>INTRODUCTION</u>

1.      This is a national class action lawsuit on behalf of investors in open-ended mutual funds with equity securities holdings in the UBS Family of Funds (the "Funds") against the Defendant directors, investment advisors, and affiliates of the Funds alleging that the Defendants breached fiduciary duties and duties of care owed directly to the Plaintiff and members of the Class, including duties arising under Sections 36(a), 36(b), and 47(b) of the Investment Company Act of 1940 (ICA), 15 U.S.C. § 80a *et seq.*, by failing to ensure that the Funds participated in securities class action settlements for which the Funds were eligible. Frank Polivka files on his own behalf, as well as a representative of a Class of all persons who owned Funds at any time during the time period of January 12, 2002 to the present. Plaintiff seeks compensatory damages, disgorgement of the fees paid to the investment advisors, and punitive damages.

2.      Over 90 million Americans entrust their savings to the directors and advisors of mutual funds. Mutual funds are so attractive and popular because they purport to provide professional money management services to investors who otherwise would not be able to afford such services. Rather than select and monitor the securities that make up her portfolio, an investor pools her money with other investors in a mutual fund and entrusts complete control and dominion over her investments to the directors and advisors of the mutual fund. As a result of this relationship of special trust, directors and advisors of mutual funds owe a fiduciary duty directly to each individual investor in the fund and are required to act with the highest obligations of good faith, loyalty, fair dealing, due care, and candor.

2

3.     "A mutual fund is a 'mere shell,' a pool of assets consisting mostly of portfolio securities that belong to the individual investors holding shares in the fund." *Tannenbaum v. Zeller*, 552 F.2d 402, 405 (2d Cir. 1977). Each investor who pools his money with others in a mutual fund owns a proportionate share of the total assets of the mutual fund. The value of each investor's portion of those pooled assets is determined by taking the market value of all of the fund's portfolio securities, adding the value of any other fund assets, subtracting fund liabilities, and dividing the result by the number of shares outstanding. *United States v. Cartwright*, 411 U.S. 546, 548 (1973). This so-called "per share net asset value" (NAV) is computed daily so that any gain or loss in fund assets is immediately allocated to the individual investors as of that specific date. Accordingly, mutual funds are unlike conventional corporations in that any increase or decrease in fund assets is immediately passed on or allocated to the fund investors as of the date of the relevant recalculation of the NAV.

4.     In the mid to late 1990s, the number of investor securities class action lawsuits against publicly traded companies alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934 (collectively the "Securities Acts") exploded.[1] In the fall of 2001, suits brought pursuant to the Securities Acts became magnified by the popular press after the corporate scandals and misdeeds at Enron, WorldCom, Tyco, and Adelphia. When a recovery is achieved in a securities class action lawsuit, investors who owned shares in the company settling the lawsuit have the option to either: (1) opt-out of the class action and pursue their own remedy or (2) remain in the class and participate in the recovery achieved. The process by which a member of the class collects the money to which he is entitled is intentionally quite simple in order to encourage participation. A class member completes a short form called a Proof of Claim and submits it to the Claims

---

[1]     There were 1,517 federal class action lawsuits brought under the Securities Acts between 1996 and 2003. *Securities Class Action Case Filings. 2003: A Year in Review. Cornerstone Research.*

3

Administrator. After the Claims Administrator receives all Proof of Claim forms, it disperses money from the settlement fund to those persons and entities with valid claims.

5.    Defendants serve in various capacities as mutual fund directors, advisors, and affiliates as will be identified herein. The Funds were putative members of dozens of class actions brought under the Securities Acts, by virtue of Funds owning the securities against which the suits were brought. However, upon information and belief that the allegations are likely to have evidentiary support and upon the representation that they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support (hereafter "upon information and belief"), Defendants failed to ensure that the Funds participated in (or opted out of) many of these class action settlements. As a result, because of Defendants' refusal to complete and submit a short form, monies contained in dozens of Settlement Funds, which rightfully belonged to the Funds' investors have gone unclaimed. Defendants' failure to protect the interests of Fund investors by recovering monies owed them is a breach of the fiduciary duty they each owe directly to Plaintiff and members of the Class.

6.    The class period begins January 12, 2002. On or before that date, the Defendants began the illegal conduct complained of herein. The Class consists of all persons who owned one of the Funds at any time between January 12, 2002 through January 12, 2005 and who suffered damages thereby.[2]

**JURISDICTION AND VENUE**

7.    This court has jurisdiction over the subject matter of this action pursuant to Section 36(b) and 44 of the Investment Company Act, 15 U.S.C. § 30a-35(b) & -43, and 28 U.S.C. §

---

[2]    Because the full extent of Defendants' breaches of fiduciary duty have yet to be revealed or have subsequently stopped, the Class Period will be expanded forward to include the period of time between January 12, 2005 and the date of the cessation of the unlawful activities detailed herein.

4

1331(a). This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the state law claims asserted herein because they arise out of a common nucleus of operative facts and are part of the same case or controversy as Plaintiff's federal claims.

8.    Venue is proper in this District because the acts and omissions complained of herein occurred in this District and Parent Company Defendant was, at all relevant times, and still is, headquartered in New York, New York.

9.    In connection with the acts and practices alleged herein, Defendants directly or indirectly used the instrumentalities of interstate commerce, including the mail systems, interstate telephone communications, and the facilities and instrumentalities of the national securities markets and national securities exchanges.

## PARTIES

### Plaintiff.

10.    Plaintiff Frank Polivka resides in Galveston County, Texas, and at all relevant times owned one of the Funds.

### Defendants.

11.    Defendant UBS Financial Services, Inc. is the ultimate parent of UBS Global Asset Management Americas, Inc. and UBS Global Asset Management (New York), Inc. Through its subsidiaries and divisions, Defendant markets, sponsors, and provides investments advisory, distribution and administrative services to the UBS Family of Funds, which consists of approximately 23 funds. UBS Financial Services, Inc. shall be referred to herein as the "Parent Company Defendant." UBS Financial Services, Inc. maintains its principal executive offices at 1285 Avenue of the Americas, New York, NY 10019.

5

12.    Walter E. Auch, Frank K. Reilly, Edward M. Roob, Adela Cepeda, J. Mikesell Thomas, Margo N. Alexander are each members of the Board of Directors for the Funds.  The Funds' Board of Directors oversee the management of the Funds. Collectively, these defendants shall be referred to as the "Director Defendants."

13.    A.    Defendant UBS Global Asset Management Americas, Inc. is a registered investment advisor and has the responsibility for the day-to-day management of the UBS Global Asset Management Americas, Inc. has approximately $10 billion in assets under management in total. UBS Global Asset Management Americas, Inc. is located at One N. Wacker Dr., 37th Fl, UBS Tower, Chicago, IL 60606.

B.    Defendant UBS Global Asset Management (New York), Inc. is a registered investment advisor and has the responsibility for the day-to-day management of the UBS Family of Funds.  UBS Global Asset Management (New York), Inc. is located at 51 W. 52nd St., 23rd Fl New York, NY 10019-6076.

C.    Defendant SSGA Funds Management, Inc. is a registered investment advisor and has the responsibility for the day-to-day management of the UBS Family of Funds.  SSGA Funds Management, Inc. is located at One Lincoln St., 27th Fl, Boston, MA 02111-2900.

D.    Defendant Marsico Capital Management, LLC is a registered investment advisor and has the responsibility for the day-to-day management of the UBS Family of Funds. Marsico Capital Management, LLC is located at 1200 17th St., #1300, Denver, CO 80202.

E.    Defendant Delaware Investments is a registered investment advisor and has the responsibility for the day-to-day management of the UBS Family of Funds.  Delaware Investments One Commerce Square is located at 2005 Market Street, Philadelphia, PA 19103.

F.    Defendant Westwood Management Corporation is a registered investment advisor and has the responsibility for the day-to-day management of the UBS Family of Funds. Westwood Management Corporation is located at 300 Crescent Ct., #1300, Dallas, TX 75201.

G.    Defendant Institutional Capital Corporation is a registered investment advisor and has the responsibility for the day-to-day management of the UBS Family of Funds. Institutional Capital Corporation is located at 225 W. Wacker Dr., #2400, Chicago, IL 60606-6304.

H.    Defendant ICM Asset Management, Inc. is a registered investment advisor and has the responsibility for the day-to-day management of the UBS Family of Funds. ICM Asset Management, Inc. is located at 601 W. Main Avenue #600, Spokane, WA 99201.

I.    Defendant Ariel Capital Management, LLC is a registered investment advisor and has the responsibility for the day-to-day management of the UBS Family of Funds. Ariel Capital Management, LLC is located at 200 E. Randolph Dr., 29th Fl, Chicago, IL 60601.

Collectively, UBS Global Asset Management Americas, Inc., UBS Global Asset Management (New York), Inc., SSGA Funds Management, Inc., Marsico Capital Management, LLC, Delaware Investments, Westwood Management Corporation, Institutional Capital Corporation, ICM Asset Management, Inc., and Ariel Capital Management, LLC shall be referred to as the "Advisor Defendants."

14.    The true names and capacities of Defendants sued herein as John Does 1 through 100 are often active participants with the above-named Defendants in the widespread unlawful conduct alleged herein whose identities have yet to be ascertained. Such Defendants served as fiduciaries on behalf of fund investors. Plaintiff will seek to amend this complaint to state the true names and capacities of said Defendants when they have been ascertained.

15.    Collectively, all Defendants named above shall be referred to herein as "Defendants."

7

## CLASS ACTION ALLEGATIONS

16.     This action is brought by Plaintiff as a class action, on his own behalf and on behalf of all others similarly situated, under the provisions of Rule 23 of the Federal Rules of Civil Procedure for compensatory and punitive damages, forfeiture of all commissions and fees paid by the Class, costs, and attorneys fees.  Plaintiff seeks certification of this action as a class action on behalf of all persons owning one of the Funds at any time between January 12, 2002 through January 12, 2005, and who were damaged by the conduct alleged herein.  This case is properly brought as a class action under Rule 23 of the Federal Rules of Civil Procedure for the reasons set forth in the following paragraphs.

17.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of the Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are tens of thousands of members in the proposed Class.  Record owners of the Funds during the relevant time period may be identified from records maintained by the Defendants and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

18.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct that is complained of herein.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether Defendants owe the investors in the fund a fiduciary duty to submit Proof of Claim forms on behalf of the Funds in settled securities cases;

8

(b)     Whether Defendants owe the investors in the fund a duty of care to act in a reasonable manner to protect and maximize Fund investors' investments by participating in settled securities class actions;

(c)     In which securities class action settlements the Funds were eligible to participate;

(d)     Whether Defendants submitted Proof of Claim forms (or opted out of the class action and pursued their own remedy) for those securities class action settlements in which Funds were eligible to participate;

(e)     To what extent the member of the Class have sustained damages and the proper measure of such damages.

20.     The claims of the Plaintiff, who is a representative of the Class herein, are typical of the claims of the Class in that the claims of all members of the Class, including the Plaintiff, depend on a showing of the acts or omissions of the Defendants giving rise to the right of the Plaintiff to the relief sought herein. There is no conflict between the named Plaintiff and other members of the Class with respect to this action, or with respect to the claims for relief set forth herein.

21.     The named Plaintiff is a representative party for the Class and is able to and will fairly and adequately protect the interests of the Class. The attorneys for the Plaintiff are experienced and capable in civil litigation and class actions.

22.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action. A class action will redress the Defendants' wrongful conduct described herein.

9

## SUBSTANTIVE ALLEGATIONS

23.     At all relevant times during the Class Period, the UBS Family of Funds held assets of approximately $10 billion.  Approximately 15 of the 23 UBS Funds have the stated investment objective of owning equity securities, varying among the funds as to the preferred market capitalization and market sector of the companies owned.  As such, throughout the Class Period, the UBS Funds held billions of dollars of investments in equity security traded on the United States' stock exchanges.

24.     During the Class Period, hundreds of securities class action cases were settled (the "Securities Class Actions").  Of the Securities Class Actions, the Funds were eligible to participate in the recovery in a significant number of the cases by virtue of their ownership of the securities during the requisite time period of each case.  While not an exhaustive list, upon information and belief, the Funds owned shares and had valid claims in many, if not all, of the following securities class action cases:

| Case Style | Class Period | Deadline to Submit Proof of Claim |
|---|---|---|
| In re Accelr8 Technology Corp. Securities Litigation | 10/7/97 - 11/16/99 | 6/16/2003 |
| In re Acrodyne Communications, Inc. | 1/1/98 - 8/14/00 | 8/24/2001 |
| Lewis v. Advanced Technical Products, Inc. et al. | 4/22/98 - 4/28/00 | 2/1/2003 |
| In re Allaire Corporation Securities Litigation | 12/7/99 - 9/18/00 | 12/18/2003 |
| In re Anicom, Inc. Securities Litigation | 2/17/99 - 7/18/00 | 1/24/2003 |
| In re Applied Digital Solutions Litigation | 1/19/00 - 5/21/02 | 3/15/2004 |
| In re ATI Technologies, Inc. Securities Litigation | 1/13/00 - 5/24/00 | 5/26/2003 |
| Bryant v. Avado Brands, Inc., et al. (Applesouth) | 5/26/95 - 9/24/96 | 3/5/2003 |
| In re Avant! Corporation Securities Litigation | 6/6/95 - 12/6/95 | 7/19/2001 |
| In re Bergen Brunswig Corp. Securities Litigation | 3/16/99 - 10/14/99 | 8/13/2001 |
| In re Brightpoint, Inc. Securities Litigation | 1/29/99 - 1/31/02 | 8/29/2003 |

| | | |
|---|---|---|
| Sinay v. Boron LePore & Associates, Inc. et al. | 5/5/98 - 2/4/99 | 7/17/2002 |
| In re California Software Corporation Securities Litigation | 2/9/00 - 8/6/00 | 3/26/2002 |
| In re Campbell Soup Co. Securities Litigation | 9/8/97 - 1/8/99 | 7/10/2003 |
| Katz v. Carnival Corporation et al. | 7/28/98 - 2/28/00 | 2/6/2004 |
| In re CHS Electronics, Inc. Securities Litigation | 8/7/97 - 5/13/99 | 3/31/2002 |
| Deborah Anderton v. ClearOne Communications, Inc. et al. | 4/17/01 - 1/15/03 | 4/8/2004 |
| Sherma v. Cole National Corporation, et al. | 1/31/98 - 5/16/03 | 10/28/2003 |
| In re Commtouch Software LTD. Securities Litigation | 4/19/00 - 2/13/01 | 9/3/2003 |
| In re Conseco, Inc. Securities Litigation | 4/28/99 - 4/14/00 | 11/30/2002 |
| In re Covad Communications Group Securities Litigation | 4/19/00 - 6/24/01 | 2/4/2003 |
| In re Cutter & Buck Inc. Securities Litigation | 6/1/00 - 8/12/02 | 1/12/2004 |
| Graf v. CyberCare Inc. et al. | 1/4/99 - 5/12/00 | 1/24/2003 |
| Maley v. DelGlobal Technologies Corporation et al. | 11/6/97 - 11/6/00 | 1/7/2002 |
| In re Dollar General Corporation Securities Litigation | 3/5/97 - 1/14/02 | 7/8/2002 |
| In re DOV Pharmaceutical, Inc. Securities Litigation | 4/25/02 - 12/20/02 | 6/16/2003 |
| In re DPL, Inc. Securities Litigation | 11/15/98 - 8/14/02 | 3/1/2004 |
| In re DrKoop.Com, Inc. Securities Litigation | 6/8/99 - 12/7/02 | 1/14/2002 |
| In re ECI Telecom LTD Securities Litigation | 5/12/00 - 2/14/01 | 1/14/2003 |
| In re eConnect, Inc. Securities Litigation | 11/18/99 - 3/13/00 | 10/12/2001 |
| In re Mex. Corporation Securities Litigation | 4/9/01 - 5/23/01 | 1/16/2004 |
| In re Emulex Corporation Securities Litigation | 1/18/01 - 2/9/01 | 10/27/2003 |
| In re Engineering Animation Securities Litigation | 2/19/98 - 10/1/99 | 6/1/2001 |
| In re Envoy Corporation Securities Litigation | 2/12/97 - 8/18/98 | 2/20/2004 |
| In re Federal-Mogul Corp. Securities Litigation | 10/22/98 - 5/25/00 | 1/9/2004 |
| In re Fidelity Holdings, Inc. Securities Litigation | 6/24/99 - 4/17/00 | 4/21/2003 |
| In re Finova Group Inc. Securities Litigation | 1/14/99 - 11/13/02 | 9/30/2002 |
| In re Flir Systems, Inc. Securities Litigation | 3/3/99 - 3/6/00 | 5/3/2001 |
| In re FPA Medical Management, Inc. Securities Litigation | 1/3/97 - 5/14/98 | 11/25/2003 |
| In re Gateway, Inc. Securities Litigation | 4/14/00 - 2/28/01 | 9/30/2002 |
| In re Gliatech Inc. Securities Litigation | 4/9/98 - 8/29/00 | 5/3/2003 |
| Pirelli Armstrong et al. v. Hanover Compressor Co., et al. | 5/4/99 - 12/23/02 | 3/12/2004 |

11

| | | |
|---|---|---|
| Warstadt et al. v. Hastings Entertainment, Inc., et al. | 6/12/98 - 5/2/00 | 4/24/2003 |
| White v. Heartland High-Yield Municipal Bond Fund, et al. | ½/97 - 10/16/00 | 11/18/2002 |
| In re HI/FN, Inc. Securities Litigation | 7/26/99 - 11/7/99 | 9/20/2003 |
| In re Homestore.com, Inc. Securities Litigation | 1/1/00 - 12/21/01 | 12/5/2003 |
| In re IBP, Inc. Securities Litigation | 2/7/00 - 1/25/01 | 10/31/2003 |
| Fogel v. Information Management Associates, Inc., et al. | 8/12/99 - 11/18/99 | 1/17/2003 |
| In re InaCom Corp. Securities Litigation | 11/9/98 - 5/17/00 | 2/12/2003 |
| In re Independent Energy Holdings PLC | 2/14/00 - 9/8/00 | 12/3/2002 |
| In re InterSpeed, Inc. Securities Litigation | 9/24/99 - 10/6/00 | 8/10/2001 |
| In re IXL Enterprises, Inc. Securities Litigation | 11/30/99 - 9/1/2000 | 8/20/2003 |
| Garza v. JD Edwards & Company et al. | 1/22/98 - 12/3/98 | 5/6/2002 |
| In re JDN Realty Corporation Securities Litigation | 2/15/97 - 4/12/00 | 12/15/2001 |
| Harold Ruttenberg, et al. (Just for Feet, Inc.) | 4/12/99 - 11/3/99 | 11/13/2002 |
| In re L90, Inc. Securities Litigation | 4/28/00 - 5/9/03 | 5/18/2004 |
| In re Landry's Seafood Restaurants, Inc. Sec. Litigation | 12/19/97 - 9/18/98 | 7/19/2002 |
| In re Legato Systems, Inc. Securities Litigation | 4/22/99 - 5/17/00 | 9/30/2002 |
| Molholt v. Loudcloud Inc., et al. | 3/8/01 - 5/1/01 | 10/29/2003 |
| In re Lucent Technologies Inc. Securities Litigation | 10/26/99 - 12/21/00 | 3/31/2004 |
| In re M&A West, Inc. Securities Litigation | 10/4/99 - 12/28/00 | 3/4/2004 |
| Dusek v. Mattel, Inc., et al. | 2/2/99 - 10/1/99 | 10/23/2003 |
| Haack v. Max Internet Communications, Inc., et al. | 11/12/99 - 5/12/00 | 11/25/2002 |
| In re Medi-Hut Co., Securities Litigation | 11/7/99 - 8/19/03 | 7/2/2004 |
| In re Medirisk, Inc. Securities Litigation | 5/4/98 - 6/30/98 | 4/30/2004 |
| In re MicroStrategy Inc. Securities Litigation | 6/11/98 - 3/20/00 | 9/3/2001 |
| In re Mitek Systems, Inc. Securities Litigation | 12/27/99 - 9/29/00 | 4/8/2002 |
| In re MP3.Com, Inc. Securities Litigation | 1/13/00 - 9/7/00 | 8/9/2001 |
| In re Mpower Communications Corp. Securities Litigation | 2/4/00 - 9/7/00 | 8/29/2003 |
| In re MSC Industrial Direct Co., Securities Litigation | 1/11/99 - 8/5/02 | 4/30/2004 |
| In re MTI Technology Corp. Securities Litigation, II | 7/22/99 - 7/2/00 | 9/2/2003 |
| In re Navigant Consulting, Inc. Securities Litigation | 1/1/99 - 11/19/99 | 3/22/2001 |
| In re NetEase.Com, Inc. Securities Litigation | 7/3/00 - 8/31/01 | 6/13/2003 |

12

| | | |
|---|---|---|
| In re Netsolve Incorporated Securities Litigation | 4/18/00 - 8/18/00 | 9/13/2002 |
| In re Network Associates Inc. Securities Litigation | 1/20/98 - 4/6/99 | 6/14/2002 |
| In re Network Associates, Inc. II Securities Litigation | 4/15/99 - 12/26/00 | 3/2/2004 |
| New Era of Networks, Inc. | 10/29/98 - 7/6/99 | 12/31/2001 |
| Norman v. New Era Of Networks, Inc., et al. | 10/18/00 - 1/5/01 | 8/12/2002 |
| In re Newpower Holdings, Inc. Securities Litigation | 10/5/00 - 12/5/01 | 4/7/2004 |
| In re Nice Systems, Ltd. Securities Litigation | 11/3/99 - 2/7/01 | 5/1/2003 |
| In re Nike, Inc. Securities Litigation | 6/29/00 - 2/26/01 | 3/10/2003 |
| Stuart Markus, et al v. The Northface, Inc. | 4/24/77 - 4/1/99 | 5/24/2001 |
| In re Northpoint Communications Group, Inc. Sec. Litigation | 8/8/00-11/29/00 | 2/11/2004 |
| In re Nuance Communications, Inc. | 1/31/01 - 3/15/01 | 12/15/2003 |
| In re On-Point Technology Systems, Inc. Securities Litigation | 5/19/97 - 4/7/00 | 8/21/2001 |
| In re Onyx Software Corporation Securities Litigation | Pursuant to 2/2001 Offering | 6/28/2004 |
| In re Optical Cable Corporation Securities Litigation | 6/14/00 - 9/26/01 | 11/1/2002 |
| In re Oxford Health Plans, Inc. Securities Litigation | 11/6/96 - 12/9/97 | 7/11/2003 |
| In re Paradyne Networks, Inc. Securities Litigation | 3/20/00 - 9/28/00 | 7/12/2004 |
| In re Party City Corporation Securities Litigation | 2/26/98 - 3/18/99 | 8/12/2003 |
| In re P-COM, Inc. Securities Litigation | 4/15/97 - 9/11/98 | 3/15/2002 |
| In re Penn Treaty Schwab Corporation Sec. Litig. | 7/23/00 - 3/29/01 | 2/23/2004 |
| In re PeopleSoft, Inc. Securities Litigation | 5/27/98 - 1/28/99 | 9/4/2001 |
| In re Performance Technologies, Inc. Securities Litigation | 2/2/00 - 5/19/00 | 7/18/2003 |
| In re PhyCor Corporation Securities Litigation | 4/22/97 - 9/22/98 | 8/5/2002 |
| In re Pilot Network Services, Inc. Securities Litigation | 8/11/98 - 10/17/00 | 5/2/2002 |
| In re PSS World Medical, Inc. Securities Litigation | 10/26/99 - 10/3/00 | 5/14/2004 |
| In re Reliance Securities Litigation | 3/14/95 - 11/14/97 | 3/23/2002 |
| In re Rent-Way Securities Litigation | 12/10/98 - 10/27/00 | 11/23/2003 |
| In re Rite Aid Corporation Securities Litigation | 5/2/97 - 11/10/99 | 6/30/2003 |
| In re Robotic Vision Systems, Inc. Securities Litigation | 1/27/00 - 5/15/01 | 8/11/2003 |
| Paul Ruble v. Rural / Metro Corporation et al. | 4/24/97 - 6/11/98 | 12/15/2003 |
| Stanley v. Safeskin Corporation, et al. | 2/18/98 - 3/11/99 | 4/28/2003 |
| In re Sagent Technology Inc. Securities Litigation | 10/21/99 - 4/18/00 | 5/27/2003 |

13

| | | |
|---|---|---|
| In re SCB Computer Technology, Inc. Securities Litigation | 11/19/97 - 4/14/00 | 3/20/2002 |
| Lone Star et al. v. Schlotzsky's Inc., et al. | 9/24/1997 | 5/23/2002 |
| In re Select Comfort Corporation Securities Litigation | 12/3/98 - 6/7/99 | 4/30/2003 |
| In re Sensormatic Electronics Corp. Securities Litigation | 8/8/00 - 4/26/01 | 11/14/2003 |
| Steinbeck v. Sonic Innovations, Inc. et al. | 5/2/00 - 10/24/00 | 6/21/2004 |
| Klein v. Southwest Gas Corporation, et al. | 12/14/98 - 1/21/00 | 11/5/2001 |
| In re Starnet Communications Int'l, Inc. Sec. Litigation | 3/11/99 - 8/20/99 | 9/20/2002 |
| In re Steven Madden Ltd. Securities Litigation | 6/21/97 - 6/20/00 | 6/18/2004 |
| In re Supervalu, Inc. Securities Litigation | 7/19/99 - 7/25/02 | 8/2/2004 |
| In re Sykes Enterprises, Inc. Securities Litigation | 7/27/98 - 9/18/00 | 4/9/2003 |
| In re Synsorb BioTech, Inc. Securities Litigation | 4/4/01 - 12/10/01 | 1/10/2004 |
| In re Take Two Interactive Software, Inc. Securities Litigation | 2/24/00 - 12/17/01 | 1/2/2003 |
| In re Team Communications Group, Inc. Securities Litigation | 11/19/99 - 3/16/01 | 8/22/2002 |
| In re Telxon Corporation Securities Litigation | 5/21/96 - 2/23/99 | 6/11/2004 |
| Spiegel v. Tenfold Corporation, et al. | 5/21/99 - 4/12/01 | 1/9/2003 |
| In re THG, Inc. Securities Litigation | 10/26/99 - 5/24/00 | 6/30/2003 |
| In re Turnstone Systems, Inc. Securities Litigation | Pursuant to 9/2/00 | 10/31/2003 |
| In re Tut Systems, Inc. Securities Litigation | 7/20/00 - 1/31/01 | 6/21/2004 |
| In re UniStar Financial Service Corp. Securities Litigation | 10/15/98 - 7/20/99 | 8/17/2001 |
| In re US Franchise Systems, Inc. Securities Litigation | 5/6/99 - 10/29/99 | 6/5/2002 |
| In re US Interactive, Inc. Securities Litigation | 2/10/00 - 11/8/00 | 12/2/2003 |
| O'Neal Trust v. VanStar Corporation, et al. | 3/11/96 - 3/14/97 | 11/26/2001 |
| Rasner v. Vari-L Company, Inc. et al. | 12/17/97 - 7/6/00 | 5/5/2003 |
| Helwig v. Vencor, Inc. et al. | 2/10/97 - 10/21/97 | 6/14/2002 |
| In re Versata, Inc. Securities Litigation | 3/2/00 - 4/30/01 | 3/17/2003 |
| In re Vesta Insurance Group, Inc. Securities Litigation | 6/2/95 - 6/28/98 | 10/17/2002 |
| In re Vision America, Inc. Securities Litigation | 11/5/98 - 3/24/00 | 7/30/2002 |
| In re Vision America, Inc. Securities Litigation | 4/24/99 - 3/24/00 | 10/8/2003 |
| In re The Warnaco Group, Inc. Securities Litigation | 9/17/97 - 7/19/00 | 3/5/2004 |
| In re Waste Management Inc. Securities Litigation | 6/11/99 - 11/9/99 | 7/15/2002 |
| In re Westell Technologies, Inc. Securities Litigation | 6/27/00 - 11/18/00 | 8/31/2003 |

| In re Ziff Davis Inc. Securities Litigation | 4/29/98 - 11/8/98 | 4/5/2002 |
|---|---|---|

25.    If the Defendants had submitted Proof of Claim forms on behalf of the Funds in these cases and all others to which the Funds had valid claims, the settlement funds would have increased the total assets held by the Funds, and such increase would have been allocated immediately to the then-current investors upon the recalculation of the Net Asset Value (NAV).

26.    However, upon information and belief, the Defendants failed to submit Proof of Claim forms in these cases and thereby forfeited Plaintiff's rightful share of the recover obtained in the securities class actions.

27.    By virtue of their position as investment advisors to the Funds with complete control of Plaintiff's investments, the Investment Advisor Defendants (and any sub-advisors and affiliates) directly owed Plaintiff and other fund investors a fiduciary duty to act in their best interests. *See Rasmussen v. A.C.T. Environmental Services Inc.*, 739 N.Y.S.2d 220, 222 (N.Y.A.D. 3 Dept., 2002). Likewise, the individual defendants, as well as Directors of mutual funds, owe a fiduciary duty to fund shareholders. *See Scheuer Family Foundation, Inc. v. 61 Associates*, 582 N.Y.S.2d 662, 666 (N.Y.A.D. 1 Dept.,1992).

28.    Plaintiff entrusted Defendants to fulfill their fiduciary duties and not knowingly to refuse to recover money rightfully belonging to the Fund investors at the time of settlement disbursement. As the Fund investors' fiduciary, only Defendants were able to submit the necessary Proof of Claim forms to recover the share of the settlements allocated to the Fund and Fund investors in the securities class action suits. Plaintiff did not receive notice of the proposed settlements nor did he have the option of submitting a Proof of Claim form in his individual capacity as an individual investor. Plaintiff and member of the Class trusted Defendants to carry out this simple task on their behalf, and, on information and belief, Defendants failed to do so. By failing to submit Proof of

15

Claim forms, Defendants breached the fiduciary duty and standard of care that they owed directly to Plaintiff and members of the Class.

### Standing.

29.    The Funds were all created and sponsored by the Parent Company Defendant. The day-to-day operations of the Funds are managed by the same Investment Advisor or a sub-advisor who reports to the Advisor. The Funds have the same directors who meet for all the funds at once. All of the contracts for all of the Funds are identical for the purposes of this action. The Funds share many expenses between and among one another. The same policy or custom related to participation in securities class action settlements applies to all the Funds. Plaintiff therefore brings this action on behalf of all the Funds.

### COUNT I
### BREACH OF FIDUCIARY DUTY

30.    Plaintiff repeats and re-alleges each of the preceding allegations as though fully set forth herein.

31.    All of the Defendants owed fiduciary duties directly to Plaintiff and members of the Class and were required to act with the highest obligations of good faith, loyalty, fair dealing, due care, and candor.

32.    As set forth above, on information and belief, the Defendants breached the fiduciary duties they owed directly to Plaintiff and members of the Class by failing to submit Proof of Claim forms or to otherwise participate in settled securities class actions and thereby recover money rightfully belonging to the Fund investors. Plaintiff and members of the class have been injured as a direct, proximate, and foreseeable result of such breach on the part of the Defendants and have suffered substantial damages.

16

33.     Because the Defendants breached their fiduciary duties owed directly to Plaintiff and members of the Class, Plaintiff is entitled to compensatory damages, and Defendants must forfeit all fees and commission they received from Plaintiff and members of the Class. *See Royal Carbo Corp. v. Flameguard, Inc. et al.*, 229 A.D.2d 430, 645 N.Y.S.2d 18 (1996) ("it is well settled that one who owes a duty of fidelity to a principal and who is faithless in the performance of his or her services is generally not entitled to recover compensation, whether commissions or salary."); *Restatement (Second) of Agency Sec. 469* (1958) ("An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty or loyalty; if such conduct constitutes a willful and deliberate breach of his contract of services, he is not entitled to compensation even for properly performed services for which no compensation is apportioned").

34.     Because the Defendants acted with reckless and willful disregard for the rights of Plaintiff and members of the Class, the Defendants are liable for punitive damages in an amount to be determined by the jury.

## COUNT II
## NEGLIGENCE AGAINST ALL DEFENDANTS

35.     Plaintiff repeats and re-alleges each of the preceding allegations as though fully set forth herein.

36.     Defendants owed a duty of care directly to Plaintiff and members of the Class to act in a reasonable manner and to protect and maximize each individual's investments in the Funds. By failing to submit Proof of Claim forms or to otherwise participate in settled securities class actions, on information and belief, Defendants did not conform to the duty they owed. As a direct and proximate result, Plaintiff and members of the Class have been damaged by millions of dollars.

17

## COUNT III
## VIOLATION OF SECTION 36(a) OF THE INVESTMENT COMPANY ACT

37.    Plaintiff repeats and re-alleges each of the preceding allegations as though fully set forth herein.

38.    Under Section 36(a) of the ICA, all of the Defendants are deemed to have a fiduciary duty to the Plaintiff and all members of the Class.

39.    On information and belief, all Defendants breached their fiduciary duty arising under Section 36(a) of the ICA by failing to submit Proof of Claim forms or to otherwise participate in settled securities class actions and thereby recover money rightfully belonging to the Fund investors and which would have been immediately allocated to investors through the recalculation of the Net Asset Value.

40.    Plaintiff and members of the Class have been injured as a direct, proximate, and foreseeable result of such breach on the part of the Defendants and have suffered substantial damages.

## COUNT IV
## VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT
## (AGAINST ADVISOR DEFENDANTS AND PARENT COMPANY DEFENDANT)

41.    Plaintiff repeats and re-alleges each of the preceding allegations as though fully set forth herein.

42.    Under Section 36(b) of the ICA, the Advisor Defendants, the Parent Company Defendant, and other affiliates of the Advisor Defendants are deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by the Fund and Fund investors.

43.    The Advisor Defendants, the Parent Company, and other affiliates, upon information and belief, breached their fiduciary duty arising under Section 36(b) of the ICA by failing to submit

18

Proof of Claim forms or to otherwise participate in settled securities class actions and thereby recover money rightfully belonging to the Fund investors and which would have been immediately allocated to the individual investors through the recalculation of the NAV.

44.     Plaintiff and members of the Class have been injured as a direct, proximate, and foreseeable result of such breach on the part of the Defendants and have suffered substantial damages.

## COUNT V
### VIOLATION OF SECTION 47(b) OF THE INVESTMENT COMPANY ACT
### (AGAINST ADVISOR DEFENDANTS AND PARENT COMPANY DEFENDANT)

45.     Plaintiff repeats and re-alleges each of the preceding allegations as though fully set forth herein.

46.     Pursuant to Section 47(b) of the ICA, 15 U.S.C. 80a-46(b), any contract made in violation, or performance of which results in violation, of the ICA is declared unenforceable.

47.     For reasons alleged herein, the Agreements between the Advisor Defendants (and the Parent Company and other Affiliates) and the Funds were performed, on information and belief, in violation of the Investment Company Act and are therefore unenforceable.

48.     Under Section 47(b) of the ICA, 15 U.S.C. 80a-46(b), the advisory agreements may be voided, and the Advisor Defendants, the Parent Company Defendant, and other affiliates are liable to return to the Funds and Fund investors all of the fees and consideration of any kind paid to them during the time period that the violations occurred.

49.     Plaintiff demands a jury trial.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(a)  Recognizing, approving and certifying the Class as specified herein.

19

(b)    In favor of the Class for compensatory and punitive damages, forfeiture of all

commissions and fees paid by the Class, plus the costs of this action together with reasonable

attorneys fees.

(c)    For such other and further relief as this Court deems just.

Dated: January 12, 2005

RESPECTFULLY SUBMITTED,

_____

Perry Weitz
WEITZ & LUXENBERG, P.C.
180 Maiden Lane
New York, NY 10038-4925
(212) 558-5500
(212) 344-5461 fax


Randall K. Pulliam
BARON & BUDD, P.C.
3102 Oak Lawn Ave.
Suite 1100
Dallas, Texas 75219-4281
(214) 521-3605
(214) 520-1181 fax


J. Allen Carney
Hank Bates
CAULEY BOWMAN CARNEY & WILLIAMS, LLP
11311 Arcade Dr.
Suite 200
Little Rock, Arkansas 72212
(501) 312-8500
(501) 312-8505 fax

20